Marie Lisette Garcia VEGA, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–98–044–CR.

Court of Appeals of Texas,
Corpus Christi.

Nov. 9, 2000.

Rehearing Overruled Dec. 29, 2000.

898

Reynaldo M. Merino, Richard B. Gould, McAllen, for Appellant.

Rene Guerra, Dist. Atty., Edinburg, Rolando Garza, Asst. Dist. Atty., Edinburg, for Appellee.

Before Justices HINOJOSA, YAÑEZ, and RODRIGUEZ.

## OPINION

Opinion by Justice HINOJOSA.

Appellant, Marie Lisette Garcia Vega, was tried as an adult in Hidalgo County. A jury found her guilty of the offenses of capital murder, aggravated kidnapping, and aggravated robbery. Because the State did not seek the death penalty for the capital murder, the trial court assessed her punishment at life imprisonment. The jury assessed her punishment at 20 years imprisonment for the aggravated kidnapping and 20 years imprisonment for the aggravated robbery.

By eighteen issues, appellant contends the trial court erred by: (1) overruling her motion to suppress the statement she made to Chicago police because it was not taken in compliance with the Texas Juvenile Justice Code and, therefore, should have been excluded under article 38.23 of the Texas Code of Criminal Procedure; (2) overruling her motion to suppress the statement she made to Chicago police because it was not taken in compliance with Illinois law and, therefore, should have been excluded under article 38.23; (3) overruling her motion to suppress the evidence because the arrest warrant was not introduced into evidence and the State failed to present facts otherwise justifying her detention, thus violating the federal and state constitutions and article 38.23; (4) admitting evidence of extraneous offenses; and (5) giving the jury an inappropriate limiting instruction regarding the extraneous offenses. We reverse the trial court's three judgments [1] and remand the case to the trial court for a new trial.

### A. BACKGROUND

In late December 1994, Starr County Sheriff's deputies were investigating the murder of Eleanor Ginder, a 56–year–old Hidalgo County resident who had been bound, gagged, beaten, strangled and

1. The trial court signed three separate judgments in this case. The judgment in Cause No. CR–0561–95–A (Count One) is for the aggravated robbery; the judgment in Cause No. CR–0561–95–A (Count Two) is for the aggravated kidnapping; and the judgment in Cause No. CR–0561–95–A (Count Three) is for the capital murder.

stabbed. Ginder's body was found abandoned in her van at a Starr County park. The deputies developed information implicating 16–year–old appellant and Jaime Nonn in the crime. After learning from Nonn's mother that appellant and Nonn had gone to Chicago, Illinois, the deputies sent a teletyped message to the Chicago Police Department, advising that arrest warrants had been issued for both suspects for aggravated kidnapping and murder, and listing the address of Nonn's aunt in Chicago where they were staying. Chicago police officers arrested appellant and Nonn at that location without incident.

Appellant was then processed into the Illinois juvenile justice system. Upon questioning by Chicago police officers, appellant gave a written statement containing the following warnings:

### STATEMENT OF

### Marie Garcia

Taken December 28, 1994 at 7:40 p.m.

Present ASA Michael Falagario

Detective Gregory Baiocchi # 21032

Youth Officer Linda Paraday # 16806

This statement taken regarding the fatal stabbing of Eleanor Ginder which occurred on December 20, 1994 at approximately 3:00 p.m. at Rio Grande City, Texas.

I understand that I have the right to remain silent and that anything I say can be used against me in a court of law. I understand that I have the right to talk to a lawyer and have him present with me during questioning, and if I cannot afford to hire a lawyer one will be appointed by the court to represent me before any questioning. Understanding these rights, I wish to give a statement.

I understand that although I am 16 years [sic] I will be tried as an adult. After being advised of her constitutional rights and stated that she understood

each of those rights and after being advised and stating that she understood that Mike Falagario was an Assistant State's Attorney, a lawyer, a prosecutor and not her lawyer, Marie Garcia agreed to give the following statement in summary and not word for word.

In the body of the statement, appellant described her participation in the planning and commission of the abduction, robbery and murder of Ginder. Appellant stated that after helping Nonn abduct and bind Ginder, she forced a rag into Ginder's mouth and helped Nonn tape Ginder's mouth and nostrils shut. Nonn further attempted to kill Ginder by twisting her neck and by striking her in the head with a shotgun. When Ginder still did not die, appellant fatally stabbed her in the throat and chest. Appellant did not give another statement after being extradited to Texas.

### B. MOTION TO SUPPRESS

#### 1. *Standard of Review*

A trial court's ruling on a motion to suppress is generally reviewed for abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999); *Maddox v. State*, 682 S.W.2d 563, 564 (Tex. Crim.App.1985). The trial court is the sole trier of fact and judge of the weight and credibility of the evidence. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App. 1999). We must afford almost total deference to a trial court's determination of facts supported by the record and its rulings on application of law to fact, or "mixed" questions of law, when those fact findings involve an evaluation of the credibility and demeanor of witnesses. *Maestas v. State*, 987 S.W.2d 59, 62 (Tex.Crim. App.1999); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). The reviewing court may not disturb supported findings of fact absent an abuse of discretion. *Ballard*, 987 S.W.2d at 891. However, we review *de novo* mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Oles*, 993

S.W.2d at 106; *Maestas,* 987 S.W.2d at 62; *Guzman,* 955 S.W.2d at 89.

■ In this case, there is no dispute concerning the facts and circumstances surrounding appellant's statement to the Chicago police. Therefore, because the trial court's ruling on these matters did not involve an assessment of the credibility and demeanor of the witnesses, we will conduct a *de novo* review of the denial of appellant's motion to suppress.

### 2. The Texas Exclusionary Rule

The Texas exclusionary rule is very broad in nature. Article 38.23(a) provides that:

[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

TEX.CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp.2000). Appellant argues that because the conditions required by Texas law for the processing of juvenile suspects were not followed by the Illinois law enforcement officers, the trial court should have excluded her written statement under article 38.23(a).

This appears to be a case of first impression in the state of Texas. This case presents the issue of whether a sister state's law enforcement officers must adhere to Texas's scheme of processing juvenile offenders for a statement taken by those officers to be admissible against the juvenile in a Texas court.

### 3. Texas Juvenile Justice Code

By thirteen issues, appellant contends the trial court erred by admitting into evidence the statement she gave to Illinois law enforcement officers because it was not taken in conformance with title 3 of the Texas Family Code, otherwise known as the Texas Juvenile Justice Code. TEX.FAM. CODE tit. 3 (Vernon 1996 and Supp.2000).

Appellant asserts the trial court should have excluded the statement under article 38.23(a) of the Texas Code of Criminal Procedure. Specifically, appellant complains that Chicago police did not comply with the following sections of the Texas Family Code in effect at the time of the offenses:

Issue No. 1: § 52.02—appellant was not taken without unnecessary delay to a place designated in this section.

Issue No. 2: § 52.025—Chicago police failed to interview her in an approved juvenile processing office.

Issue No. 3: §§ 51.09 & 52.04—Chicago police failed to have an authorized officer of the Texas juvenile court decide whether appellant should be further detained.

Issue No. 4: § 51.09—appellant's written statement does not contain all of the warnings required.

Issue No. 5: § 51.09—appellant's written statement does not contain a certificate by a magistrate that appellant knowingly, intelligently and voluntarily waived her rights before making the statement.

Issue No. 6: § 51.09—appellant was never advised of her rights by a magistrate before being interrogated.

Issue No. 7: § 51.09—appellant was never presented before a magistrate at any time before giving her statement.

Issue No. 8: §§ 51.12 & 52.025—appellant was not detained in a facility approved by Texas authorities.

Issue No. 9: § 52.025—appellant was detained for more than six hours before the conclusion of her statement.

Issue No. 10: § 51.09—appellant's statement was not signed in the presence of a magistrate with no law enforcement officer present.

Issue No. 11: § 51.09—appellant's statement was signed in the presence of at least one law enforcement official who was armed.

Issue No. 12: § 51.12—appellant was detained in an area where adults arrested for or charged with a crime are detained.

Issue No. 13: § 52.025—appellant was improperly left unattended in the interview room.

### 4. Which State's Juvenile Processing Law Should Apply?

Appellant contends that the admissibility of her Illinois statement should be evaluated under article 38.23(a) by determining whether her statement was taken under the conditions mandated by chapters 51 and 52 of the Texas Family Code, which specify how a Texas juvenile suspect must be processed. Appellant argues that because her written statement was not procured in conformance with the Texas Family Code, it should be excluded under article 38.23(a). Appellant does not allege that her statement was obtained in violation of any constitutional right, or that it was involuntary.

The State contends that exclusion of appellant's statement is not required by article 38.23(a) because appellant was subject to Illinois law, not Texas law, when she was arrested and processed by Illinois law enforcement officers, and that appellant's statement was taken in accordance with Illinois law.

■ Under which standard should the admissibility of appellant's statement be evaluated? This is a classic conflicts-of-law question. For substantive questions of law, Texas has adopted the "most significant relationship" approach, using the factors set forth in RESTATEMENT (SECOND) OF CONFLICT OF LAWS: CHOICE OF LAW PRINCIPLES § 6 (1988). This approach requires the weighing of public policy concerns and the conflicting interests of the different jurisdictions in the outcome of the matter in controversy. See Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 420–21 (Tex.

1984); Gutierrez v. Collins, 583 S.W.2d 312, 318 (Tex.1979); Seth v. Seth, 694 S.W.2d 459, 462 (Tex.App.—Fort Worth 1985, no writ).

■ The rule is different, however, when the matter at issue is procedural in nature. "One of the basic tenets of conflict-of-law resolution ... is that the law of the forum in which the judicial proceeding is held determines the admissibility of evidence ." Davidson v. State, 25 S.W.3d 183, 185 (Tex.Crim.App.2000); see also RESTATEMENT (SECOND) OF CONFLICT OF LAWS: EVIDENCE § 138 (1988)("The local law of the forum determines the admissibility of evidence ..."). In Davidson, the defendant joined a traveling carnival and fled to Canada while he was being investigated in Texas for sexually abusing his two minor daughters. Davidson, 25 S.W.3d at 184. When Davidson attempted to re-enter the United States at a border crossing in Montana, a U.S. Customs officer performed a routine check and found that an arrest warrant for Davidson was pending in Tarrant County, Texas. Id. The Customs officer detained Davidson, warned him appropriately and interrogated him. Id. Davidson voluntarily made numerous statements implicating himself in the sexual abuse of his daughters. Id. The customs officer did not make a recording of the oral statement as required by article 38.22 of the Texas Code of Criminal Procedure, but in accordance with Montana and federal law, he wrote a report relating the contents of the statement. Id. This report was admitted into evidence at Davidson's trial, and he was convicted of aggravated sexual assault and indecency with a child. Id. The convictions were upheld by the Fort Worth Court of Appeals, but the Texas Court of Criminal Appeals reversed the court of appeals. Id.

The court of criminal appeals held that the rule set forth in article 38.22[2] is proce-

---

**2.** Article 38.22, section 3(a) of the code of criminal procedure provides:

Sec. 3. (a) No oral or sign language statement of an accused made as a result of

dural in nature, and must be strictly followed in a Texas judicial proceeding. *Id.* at 185–86. Because the requirements of article 38.22 were not followed, the statement was inadmissible in a Texas court, even though it was obtained by a federal agent in Montana in accordance with both Montana and federal law:

> Considerations of efficiency and convenience require that questions relating to the admissibility of evidence, whether oral or otherwise, should usually be determined by the local law of the forum; the trial judge must make most evidentiary decisions with dispatch if the trial is to proceed with reasonable celerity, and should therefore generally apply the local evidentiary law of his own state.

*Id.* at 185–86 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS: EVIDENCE § 138 cmt. a (1988)). The court of criminal appeals explicitly held that article 38.23(a) is substantive in nature, not procedural. *Id.* n. 4. The court stated:

> While both [articles] 38.22 and 38.23 govern when certain evidence shall and shall not be admitted at trial, they do so in very different terms. [Article] 38.23 mandates exclusion of evidence when it has been obtained in contravention of legal or constitutional rights. As such, it is properly identified as substantive in nature, as it is an attempt to provide a remedy for a violation of those rights [citations omitted]. In contrast, [article] 38.22 merely prescribes the various requirements that must be satisfied before a statement made by an accused as a result of custodial interrogation will be

admitted against him/her at trial. That such requirements are not met does not mean that the statement was necessarily obtained as a result of any legal or constitutional violation, and [article] 38.22 mandates exclusion of such statements by its own terms and without reference to [article] 38.23. As such, it more closely resembles our various rules of evidence which determine the admissibility of contents of writings, recordings, and photographs. *See* TEX.R.EVID. 1001–1009. Thus [article] 38.22 is more appropriately characterized as a procedural evidentiary rule.

*Id.; see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS: EVIDENCE § 138 cmt. c (1988) ("On occasion, a rule phrased in terms of evidence may in fact be a rule of substantive law. In such a case, the otherwise applicable law will be applied.").

As a juvenile suspect, appellant was entitled to the procedural protection that the Texas Juvenile Justice Code provides. Section 51.09, which specifies the procedural conditions under which a statement made by a juvenile as a result of custodial interrogation will be admissible, is especially relevant in this case. The version of section 51.09 in effect at the time of these offenses provides:

### § 51.09.  Waiver of Rights

(a) Unless a contrary intent clearly appears elsewhere in this title, any right granted to a child by this title or by the constitution or laws of this state or the United States may be

custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

(2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;

(4) all voices on the recording are identified; and

(5) not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

TEX.CODE CRIM.PROC.ANN. art. 38.22, § 3(a) (Vernon Supp.2000).

waived in proceedings under this title if:

(1) the waiver is made by the child and the attorney for the child;

(2) the child and the attorney waiving the right are informed of and understand the right and the possible consequences of waiving it;

(3) the waiver is voluntary; and

(4) the waiver is made in writing or in court proceedings that are recorded.

(b) Notwithstanding any of the provisions of Subsection (a) of this section, the statement of a child is admissible in evidence in any future proceeding concerning the matter about which the statement was given if:

(1) when the child is in a detention facility or other place of confinement or in the custody of an officer, the statement is made in writing and the statement shows that the child has at some time prior to the making thereof received from a magistrate a warning that:

(A) the child may remain silent and not make any statement at all and that any statement the child makes may be used in evidence against the child;

(B) the child has the right to have an attorney present to advise the child either prior to any questioning or during the questioning;

(C) if the child is unable to employ an attorney, the child has the right to have an attorney to counsel with the child prior to or during any interviews with peace officers or attorneys representing the state;

(D) the child has the right to terminate the interview at any time;

(E) if the child is 15 years of age or older at the time of the violation of a penal law of the grade of felony the juvenile court may waive its jurisdiction and the child may be tried as an adult;

(F) the child may be sentenced to commitment in the Texas Youth Commission with a transfer to the institutional division of the Texas Department of Criminal Justice for a term not to exceed 30 years if the child is found to have engaged in delinquent conduct, alleged in a petition approved by a grand jury, that included:

(1) murder;

(2) capital murder;

(3) aggravated kidnapping;

(4) aggravated sexual assault;

(5) deadly assault on a law enforcement officer, corrections officer, court participant or probation personnel; or

(6) attempted capital murder; and

(G) the statement must be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present, except that a magistrate may require a bailiff or a law enforcement officer if a bailiff is not available to be present if the magistrate determines that the presence of the bailiff or law enforcement officer is necessary for the personal safety of the magistrate or other court personnel, provided that the bailiff or law enforcement officer may not carry a weapon in the presence of the child. The magistrate must be fully convinced that the child understands the nature and contents of the statement and that the child is signing the same voluntarily. If such a statement is taken, the magistrate shall sign a written statement verifying the foregoing requisites have been met.

The child must knowingly, intelligently and voluntarily waive these

rights prior to and during the making of the statement and sign the statement in the presence of a magistrate who must certify that he has examined the child independent of any law enforcement officer or prosecuting attorney, except as required to ensure the personal safety of the magistrate or other court personnel, and has determined that the child understands the nature and contents of the statement and has knowingly, intelligently and voluntarily waived these rights.

(2) it be made orally and the child makes a statement of facts or circumstances that are found to be true, which conduct tends to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed.[3]

(3) the statement was res gestae of the delinquent conduct or the conduct indicating a need for supervision or of the arrest.

(c) A warning under Subsection (b)(1)(E) or Subsection (b)(1)(F) of this section is required only when applicable to the facts of the case. A failure to warn a child under Subsection (b)(1)(E) of this section does not render a statement made by the child inadmissible unless the child is transferred to a criminal district court under Section 54.02 of this code. A failure to warn a child under Subsection (b)(1)(F) of this section does not render a statement made by the child inadmissible unless the state proceeds against the child on a petition approved by a grand jury under Section 53.045 of this code.

(c)[4] In addition to the warnings that a child must receive under Subsection (b)(1) of this section for the child's statement to be admissible in evidence, the child must also receive a warning from the magistrate that the child may be sentenced to commitment in the Texas Youth Commission with a transfer to the institutional division of the Texas Department of Criminal Justice for a term not to exceed 40 years if the child is found to have engaged in delinquent conduct, alleged in a petition approved by a grand jury, that included:

(1) murder (Section 19.02, Penal Code);

(2) capital murder (Section 19.03, Penal Code);

(3) aggravated kidnapping (Section 20.04, Penal Code);

(4) aggravated sexual assault (Section 22.021, Penal Code);

(5) deadly assault on a law enforcement officer, corrections officer, or court participant (Section 22.03, Penal Code); or

(6) criminal attempt (Section 15.01, Penal Code) if the offense attempted was capital murder (Section 19.03, Penal Code).

Act of May 22, 1991, 72nd Leg., ch. 429, § 1; Act of May 24, 1991, 72nd Leg., ch. 557, § 1; Act of May 27, 1991, 72nd Leg., ch. 593, § 1 (current version at Tex.Code Crim.Proc.Ann. §§ 51.09, 51.095 (Vernon Supp.2000)).

The court of criminal appeals has recently reaffirmed that law enforcement personnel must strictly follow the requirements of the family code when dealing with juvenile suspects. The court stated:

The Legislature has set forth very specific actions which a law enforcement officer must take when arresting a juvenile. We are aware of the disturbing increase in juvenile crime in our state, and we are sympathetic to law enforce-

---

**3.** The State never attempted to admit appellant's statement on this basis, choosing to rely solely on its admissibility under subsection (b)(1).

**4.** There were two versions of subsection (c) enacted by the Texas Legislature; both versions were in effect at the time of these offenses.

ment's efforts to deal with violent juvenile offenders. Nevertheless, we must not ignore the Legislature's mandatory provisions regarding the arrest of juveniles. We informed the citizenry, a decade ago in a unanimous opinion,[5] of the Legislature's clear intent to reduce an officer's impact on a juvenile in custody. Today we remind police officers of the Family Code's strict requirements.

*Le v. State,* 993 S.W.2d 650, 655 (Tex.Crim. App.1999) (holding a juvenile murder suspect's confession inadmissible because of failure of police to process him in accordance with family code provisions); *see In the Matter of R. R.,* 931 S.W.2d 11, 14 (Tex.App.—Corpus Christi 1996, no pet.) (police officers, courts and others involved with juveniles are bound to comply with the detailed and explicit procedures set out in the Family Code); *accord In the Interest of D.Z.,* 869 S.W.2d 561, 564 (Tex. App.—Corpus Christi 1993, writ denied).

■ In her third, fourth, fifth, sixth, seventh, tenth, and eleventh issues, appellant contends the trial court erred in not excluding her Illinois statement because the Chicago police did not comply with section 51.09 of the Texas Family Code. Section 51.09 functions for juveniles in the same manner as article 38.22 functions for adults. Section 51.09 sets out the procedural requirements for the admissibility of statements given by juveniles during custodial interrogation. Because section 51.09 is the functional equivalent for juveniles of article 38.22, it should likewise be treated as procedural in nature. Thus, under the *Davidson* rationale, we conclude section 51.09 is a procedural rule that must be strictly applied by Texas courts in determining the admissibility of a juvenile's statement.

■ In the instant case, the State concedes that the Chicago police did not follow the provisions of chapter 51 of the Texas Family Code. Therefore, in accordance with the *Davidson* rationale, we

hold the trial court erred in admitting appellant's statement into evidence.

### C. HARM ANALYSIS

■ Appellant has not urged any constitutional error. She has merely asserted a statutory error based on the provisions of the Juvenile Justice Code. When non-constitutional error is found, the appellate court must disregard any error that does not affect substantial rights. TEX.R.APP.P. 44.2. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *Rios v. State,* 982 S.W.2d 558, 561 (Tex. App.—San Antonio 1998, pet. ref'd). The United State Supreme Court has construed the nearly identical federal harmless error rule as follows:

> If, when all is said and done, the [court's] conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand.... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, *or if one is left in grave doubt,* the conviction cannot stand.

*O'Neal v. McAninch,* 513 U.S. 432, 437–38, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)(em-

**5.** *Comer v. State,* 776 S.W.2d 191, 194–95

(Tex.Crim.App.1989).

phasis in original); *see Cavazos v. State,* 969 S.W.2d 454, 457 (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557). "Grave doubt" means "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *O'Neal,* 513 U.S. at 435, 115 S.Ct. 992.

The impact of a written confession is undeniably very strong; as the Austin Court of Appeals has noted in a recent case involving the erroneous admission of a juvenile's written statement,

> [b]ecause of the potentially dramatic effect of a written confession on the decision-making process of a jury, this Court has grave doubts that the introduction of appellant's written statement had no effect on the outcome of the proceeding.

*In the Matter of C.R.,* 995 S.W.2d 778, 786–87 (Tex.App.—Austin 1999, pet. denied).

 While error from the admission of a confession may be harmless in light of independent evidence of guilt in a case, *Sterling v. State,* 800 S.W.2d 513, 520 (Tex. Crim.App.1990), we cannot say with fair assurance, after examining the entire record, that the erroneous admission of appellant's Illinois confession did not influence the jury, or had but a slight effect. Appellant gave a statement only to the Chicago police. She did not give another statement after she was returned to Texas. At trial, appellant testified that Nonn alone planned the robbery, abduction and murder, and that she did not willingly participate in the crimes. She testified she was too frightened of Nonn and too dependent on him to escape when she had the chance, and that she had agreed to take responsi-

bility for Nonn's crimes if they were caught.

The only forensic evidence tying appellant to the crime was one of her fingerprints on a plastic box found in the van. Her fingerprints were not found on the shotgun or the knife, nor were any bloodstains or any of the victim's hairs found on appellant's clothing or boots. Although there was eyewitness testimony as to appellant's participation with Nonn in a shopping spree at two Starr County stores using the victim's Discover credit card, and appellant's participation in the pawning of new electronic items purchased with the card, there was little or no substantive evidence admitted at appellant's trial linking her specifically to the crimes of which she was convicted, other than her Illinois statement.[6] Given the acknowledged dramatic impact of a written confession, we cannot say with fair assurance that the erroneous admission of appellant's statement had no influence on the jury, or but a slight effect.

We hold the trial court abused its discretion by admitting appellant's Illinois statement into evidence. We sustain appellant's third, fourth, fifth, sixth, seventh, tenth and eleventh issues. Because of our disposition of these issues, it is unnecessary to address appellant's remaining issues. *See* Tex.R .App.P. 47.1.

We reverse all three judgments of the trial court and remand for a new trial.

---

**6.** Appellant's co-defendant, Nonn, did not testify at appellant's trial, but defense counsel offered the statement Nonn gave to Chicago police into evidence. Nonn's statement is nearly identical to appellant's statement. Nonn implicated appellant in the planning and commission of the crime and said that appellant administered the fatal stabbing.

We note that appellant's counsel offered Nonn's statement for the limited purpose of showing "what was said," not for the truth of the statement. The statement was admitted on this limited basis without objection from the State, and the jury was so instructed. We conclude that Nonn's statement is not substantive evidence. *See* Tex.R.Evid. 105.