R00002.aa1; Valdez v. SOT



NUMBER 13-00-002-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

____________________________________________________________________

JOSE ANGEL DOMINGUEZ VALDEZ A/K/A JULIO BANDERAS GUADARRAMA, Appellant,


v.


THE STATE OF TEXAS, Appellee.

____________________________________________________________________


On appeal from the 139th District Court of Hidalgo County, Texas.

____________________________________________________________________


O P I N I O N

Before Justices Hinojosa, Castillo, and Amidei (1)

Opinion by Justice Hinojosa



A jury found appellant, Jose Angel Dominguez Valdez a/k/a Julio Banderas Guadarrama, guilty of the offense of murder
(2)and assessed his punishment at ninety-nine years imprisonment and a $10,000 fine. In five issues, appellant contends
that, during trial, he received ineffective assistance of counsel and the trial court erred by admitting: (1) hearsay evidence,
(2) photographs of the victim, (3) extraneous offense evidence during the guilt/innocence phase, and (4) extraneous offense
evidence during the punishment phase. We affirm.

A. Background


The evidence shows that appellant forcefully entered the home of the victim, Pedro Zuniga, at approximately 10:50 p.m. on
the night of October 22, 1996, and fatally shot Zuniga in the head in front of his wife and three children. Appellant fled in
a red pick-up truck. The victim's wife, Martha Zuniga, testified she knew the man as "Angel," and that she had seen him
before in the red pick-up truck. She identified him in court as the man who shot her husband. The victim's daughter,
Norma Zuniga, testified that her father referred to the intruder as "Angel," and that she had met Angel before.

Hidalgo County Sheriff's Deputies were dispatched to the scene of the crime at 11:14 p.m. The deputies testified that when
they arrived at the scene, Mrs. Zuniga and the children were hysterical. When she calmed down, Mrs. Zuniga told them
that Angel had kicked in the front door, shot her husband, and then left in a red pick-up truck.

The officers drove Mrs. Zuniga to a house she knew to be appellant's residence. As they passed by the house, they saw a
red pick-up truck approaching. Mrs. Zuniga told the officers that the truck was the shooter's truck. When officers went to
the home, a single red pick-up truck was parked there. Appellant's girlfriend answered the door, and she gave the officers
consent to search the red truck. The girlfriend told the officers the red truck was hers and that appellant also lived at the
house.

B. Admission of Evidence


The admission of evidence is within the sound discretion of the trial court, and its ruling shall not be disturbed on appeal
absent a clear abuse of discretion. McVickers v. State, 874 S.W.2d 662, 663 (Tex. Crim. App. 1993); Guerra v. State, 942
S.W.2d 28, 32 (Tex. App.-Corpus Christi 1996, pet. ref'd). This standard of review is applicable to: (1) the admittance of a
statement under the excited utterance exception to the hearsay rule; (3) (2) the admission of extraneous offense evidence
during the guilt/innocence phase; (4) (3) the admission of extraneous offense evidence during the punishment phase; (5) and
(4) the admission of photographs. (6) A trial court abuses its discretion if it acts without reference to any guiding principles
or acts in a manner that is arbitrary and capricious. Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

C. Admission of Hearsay Statements


In his first issue, appellant contends the trial court erred in admitting certain hearsay statements against him. Hearsay is
defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to
prove the truth of the matter asserted. Tex. R. Evid. 801(d). Admission of hearsay evidence against a criminal defendant
implicates the Confrontation Clause of the Sixth Amendment because the defendant is not afforded the opportunity to
confront the out-of-court declarant. Ohio v. Roberts, 448 U.S. 56, 63 (1980); Guidry v. State, 9 S.W.3d 133, 149 (Tex.
Crim. App. 1999), cert. denied, --U.S. -- , 121 S. Ct. 98 (2000). Hearsay is not admissible except as provided by statute or
the rules of evidence. Tex. R. Evid. 802; Epps v. State, 24 S.W.2d 872, 880 (Tex. App.-Corpus Christi 2000, pet. ref'd). A
hearsay statement may be introduced against a defendant if the statement bears sufficient indicia of reliability. Roberts, 448
U.S. at 99; Guidry, 9 S.W.3d at 149. A hearsay statement is per se reliable under the Confrontation Clause if it falls within
a "firmly rooted" exception to the hearsay rule. White v. Illinois, 502 U.S. 346, 356 (1992); Guidry, 9 S.W.3d at 149-50. 
Even if a hearsay statement does not fall within a "firmly rooted" exception, it may nonetheless be sufficiently reliable for
Confrontation Clause purposes if it has "particularized guarantees of trustworthiness." Idaho v. Wright, 497 U.S. 805, 817
(199); Guidry, 9 S.W.3d at 150. 

1.


Appellant contends the trial court erred in admitting the following hearsay evidence: Deputy Salazar's testimony that Mrs.
Zuniga told him Angel had shot her husband.

Deputy Salazar testified that he responded to the 11:14 p.m. dispatch and was the first officer on the scene. When he
arrived, Mrs. Zuniga was "very hysterical, crying. It took her-took several minutes before she could calm down. . . ." When
the prosecutor asked Salazar who Mrs. Zuniga said committed the crime, appellant's counsel objected on hearsay grounds. 
The prosecutor responded that the statement was an excited utterance, and thus, an exception to the hearsay rule under
Texas Rule of Evidence 803(2). The trial court overruled the objection, and the deputy testified Mrs. Zuniga told him that
Angel had shot her husband.

Rule 803(2) provides: "[a] statement relating to a startling event or condition made while the declarant was under the stress
of excitement caused by the event or condition" is not hearsay. Tex. R. Evid. 803(2); see also Wood v. State, 18 S.W.3d
642, 652 (Tex. Crim. App. 2000). This exception is founded on the belief that statements made as a result of a startling
event are involuntary and do not allow the declarant an adequate opportunity to fabricate, thereby ensuring enough
trustworthiness to fall outside the hearsay exception. Salley v. State, 25 S.W.3d 878, 880 (Tex. App.-Houston [14th Dist.]
2000, no pet.); Couchman v. State, 3 S.W.3d 155, 158-59 (Tex. App.-Fort Worth 1999, pet ref'd.).

In determining whether a statement is admissible as an excited utterance, it is not dispositive that the statement is an answer
to a question or that it was separated by a period of time from the startling event. Salazar, 38 S.W.3d at 154; Lawton v.
State, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995). Another factor to consider is whether intervening circumstances
occurred between the shocking event and the statement. Ward v. State, 657 S.W.2d 133, 136 (Tex. Crim. App.
1983);Mosley v. State, 960 S.W.2d 200, 204 (Tex. App.-Corpus Christi 1997, no pet.). The critical determination is
whether the declarant was still dominated by the emotions, excitement, fear or pain of the event or condition at the time of
the statement. Salazar, 38 S.W.3d at 154; McFarland v. State, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992). 

The evidence shows that Mrs. Zuniga made the statement to Deputy Salazar some thirty minutes after she witnessed her
husband's murder, and that she was hysterical just prior to making the statement. There is no evidence of any intervening
occurrence. We conclude the trial court did not abuse its discretion in admitting the statement as an excited utterance.

2.


Appellant contends the trial court erred in admitting the following hearsay evidence: Deputy Salazar's testimony that a
"neighbor identified the red truck leaving the scene." The record shows appellant did not object to this testimony. We
conclude appellant has waived any complaint concerning the admission of this evidence. Tex. R. App. P. 33.1.

3.


Appellant contends the trial court erred in admitting the following hearsay evidence: Deputy Garza's testimony that Mrs.
Zuniga told him at the crime scene that "Angel Valdez had kicked in the front door and shot her husband." The record
reflects appellant did not object to this testimony. We conclude appellant has waived any complaint concerning the
admission of this evidence. Tex. R. App. P. 33.1.

4.


Appellant contends the trial court erred in admitting the following hearsay evidence: Deputy Benavidez's testimony that
Mrs. Zuniga told him appellant fled in a red pick-up truck. The record shows appellant did not object to this testimony. We
conclude appellant has waived any complaint concerning the admission of this evidence. Tex. R. App. P. 33.1.

5.


Appellant contends the trial court erred in admitting the following hearsay evidence: Deputy Benavidez's testimony that
appellant's girlfriend consented to a search of the red pick-up truck and told him appellant used the truck.

When Deputy Benavidez started to testify concerning what appellant's girlfriend told him, appellant objected on hearsay
grounds, and the trial court sustained the objection. Shortly thereafter, the prosecutor asked Benavidez:

Prosecutor: Did you get consent to search the pick-up?

Benavidez: Yes, I did.

Prosecutor: Who was that person?

Benavidez: The defendant's live-in girlfriend.

Prosecutor: Did she say whose truck it was?

Benavidez: Hers.

Prosecutor: Did you ask her if the defendant ever used the truck?



Benavidez: Yes, I did.



Prosecutor: And to the best of your knowledge has the defendant ever used the truck?



Benavidez: No, I don't recall that.



Appellant did not object to this testimony. Accordingly, we conclude appellant has waived any complaint concerning the
admission of this evidence. Tex. R. App. P. 33.1.

6.


Appellant contends the trial court erred in admitting the following hearsay evidence: Deputy Garza's testimony during the
punishment phase that the victim of a kidnapping and assault, which occurred one day before Pedro Zuniga's murder, told
him appellant had assaulted him. The record reflects appellant did not object to this testimony on hearsay grounds. We
conclude appellant has waived any complaint concerning the admission of this evidence as hearsay. Tex. R. App. P. 33.1.

We hold the trial court did not err in admitting any of the complained-of testimony. Appellant's first issue is overruled. (7)

D. Admission of Extraneous Offense Evidence


During Guilt/Innocence Phase of Trial




In his second issue, appellant contends the trial court erred in allowing the State to introduce evidence of his prior arrest,
over his objection. 

During the guilt/innocence phase of the trial, Deputy Benavidez testified, without objection, that when he served appellant
with an arrest warrant in January 1998, appellant gave him three variations of his name - Jose Angel Julio Guadarrama,
Jose Angel Dominguez Valdez, and Julio Balderas Guadarrama. Benavidez then testified:

Prosecutor: What was your next action since you now have two names with the same individual?



Benavidez: Well, I conducted a criminal history check to make sure who I had with me.



Prosecutor: And after your investigation, were you able to determine if this person was the same person that -using two
different names?



Benavidez: Yes, I did.



Prosecutor: And how was that determination made?



Benavidez: There was an arrest of Mr. Valdez from McAllen PD in October of '96 and I went ahead-



Appellant's Counsel: Your Honor, I'm going to object to this information. There was a motion in limine as to criminal
background, Your Honor.



Prosecutor: Are you referring to the arrest warrant from back then?



The Court: Hold on just a minute. Let's not compound anything. Remove the jury. 

 

Outside the presence of the jury, the trial court held a hearing on the propriety of this testimony. Appellant objected that he
had not been given proper notice of the State's intention to introduce this particular extraneous offense. (8) The State argued
it was only trying to establish that appellant used two different names, not that appellant had committed an extraneous
offense. The trial court instructed the prosecutor to "stay away from that area [the prior arrest] . . . . One more peep out of
you and this case is going south. Is that absolutely clear to everybody?" Appellant's request for a mistrial was denied.

When the jury returned, Benavidez testified, without objection, that he had fingerprints for an individual named Jose Angel
Dominguez Valdez, and fingerprints for an individual named Julio Banderas Guadarrama. When the prints were compared,
they were identical.

Appellant complains the State was allowed to introduce evidence of his prior arrest over his objection. We conclude,
however, that the trial court actually sustained appellant's objection, leaving nothing for our review. See Tex. R. App. P.
33.1. Appellant's second issue is overruled.

E. Admission of Extraneous Offense Evidence 


During Punishment Phase of Trial




In his third issue, appellant complains that during the punishment phase, the trial court erred by allowing the State to
present evidence of extraneous offenses he committed.

The admission of evidence of extraneous offenses during the punishment phase of the trial of a non-capital offense is
governed by article 37.07, § 3(a) of the code of criminal procedure:

Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the
state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior
criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances
of the offense for which he is being tried, and, notwithstanding Rule 404 and 405, Texas Rules of Criminal Evidence, any
other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been
committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously
been charged with or finally convicted of the crime or act.



Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(Vernon Supp. 2001). The defendant has already been convicted of a crime at
the time the jury hears this evidence, and the jury uses the extraneous offense evidence in assessing punishment; thus, the
punishment phase evidence serves a purpose very different from evidence presented at the guilt-innocence phase. Fields v.
State, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999).

Article 37.07, § 3(a) provides that extraneous offense evidence may not be considered in assessing punishment until the
fact-finder is satisfied beyond a reasonable doubt that these prior acts are attributable to the defendant. Id. The trial judge
has the responsibility of determining the threshold admissibility of extraneous offenses in the punishment phase; however,
the jury as the exclusive judge of the facts is to determine whether or not the State has proved the extraneous offenses
beyond a reasonable doubt. Mitchell, 931 S.W.2d at 954. The trial court's decision on the threshold admissibility of
extraneous offense evidence at the punishment phase is reviewed for abuse of discretion. Mitchell, 931 S.W.2d at
953;Saenz v. State, 843 S.W.2d 24, 26 (Tex. Crim. App. 1992). 

 The trial court errs if it fails to instruct the jury in the punishment charge that it may not consider the extraneous acts in
assessing punishment unless it finds beyond a reasonable doubt that the acts are attributable to the defendant. Huizar v.
State, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000). In the instant case, the jury was charged that it could not use the
evidence of extraneous offenses in assessing appellant's punishment unless it found beyond a reasonable doubt that
appellant had committed the offenses.

Before testimony began in the punishment phase, and outside the presence of the jury, appellant requested a determination
from the trial judge that "there is sufficient evidence to find that these . . . [extraneous] offenses did occur." The trial court
granted the request, and held a hearing. Deputy Garza testified that he took a report from Gerardo Zuniga and Juana Torres
on October 21, 1996. They told him that they had been kidnapped by Angel. Gerardo Zuniga told him Angel had also
beaten him. Appellant objected to this testimony:

Appellant's Counsel: It's hearsay. It's not been proven beyond a reasonable doubt that Mr. Angel or Julio Banderas
Guadarrama did commit the crime of kidnapping, Your Honor.



Prosecutor: This is not our only witness concerning this incident. He's here simply to lay a foundation for other witnesses.



Appellant's Counsel: The only one I'm concerned with are the actual victims coming in. If the victims will take the stand
and testify that -



The Court: Well, I'm not going to try the case for you folks, especially the State. The objection will be overruled.



The hearing continued outside the presence of the jury. The State called Gerardo Zuniga, the murder victim's brother, who
testified that Angel had kidnapped and beaten him and had also kidnapped his wife. Deputy Benavidez testified that
Gerardo Zuniga had reported a kidnapping and assault, and that his investigation revealed appellant had committed the acts. 

Benavidez also testified he investigated an aggravated robbery of three men that occurred at appellant's ranch on October
10, 1996. The victims were mariachis from Mexico, and their costumes, instruments and money were stolen. Benavidez's
investigation showed that appellant committed the robberies. Gerardo Zuniga was present at appellant's ranch that night; he
gave Benavidez an affidavit stating what happened to the mariachis. Benavidez did not personally interview the victims.
He relied on a report they gave another deputy, who no longer works at the Sheriff's Office, and whom Benavidez was
unable to locate. Benavidez also tried to find the three victims, but he was unable to find them.

Benavidez further testified that he had investigated a complaint of an unauthorized use of a vehicle. Miss Garza from
Mission filed a report that appellant had not returned her van on October 23, 1996. She knew it was appellant because she
had seen his photograph on television in connection with the murder. She later reported that she had received a telephone
call from appellant, which was transferred to her by a Mexican operator. The State attempted to locate Garza, but was
unable to find her. At the conclusion of the hearing, the trial court overruled appellant's objections to Benavidez's
testimony.

Appellant complains only that the trial court erred in admitting evidence of the aggravated robberies of the three mariachis
and the unauthorized use of a vehicle because "there was no victim to testify and the evidence was secondhand hearsay."
He does not complain that the State failed to prove the offenses beyond a reasonable doubt, or that the jury was not given
the proper instruction on the State's burden of proof. As we noted above, the trial judge has only the responsibility of
determining the threshold admissibility of extraneous offenses in the punishment phase; it is the jury, as the exclusive judge
of the facts, that determines whether or not the State has proved the extraneous offenses beyond a reasonable doubt.
Mitchell, 931 S.W.2d at 954. We will address each complained-of extraneous offense separately.

1. The Aggravated Robberies


At the hearing, the State proffered Benavidez's testimony regarding his investigation of the three aggravated robberies, and
that Gerardo Zuniga was an eyewitness to the events of that evening. The trial court knew Gerardo was present and ready
to testify because he testified at the hearing regarding his kidnapping and assault. We hold the trial court did not abuse its
discretion in admitting the extraneous offense evidence regarding the aggravated robberies of the mariachis.

2. The Unauthorized Use of a Vehicle


In its brief, the State concedes that the admission of this testimony was error. We agree. Therefore, we must conduct a
harm analysis.

The reasonable-doubt standard for consideration of extraneous offenses in the assessment of punishment is neither
constitutionally required nor based on a constitutional mandate. Fields, 1 S.W.3d at 688. We must disregard any error not
of constitutional magnitude unless it has affected the substantial rights of the defendant. See Tex. R. App. P. 44.2; Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); Couchman v. State, 3 S.W.3d 155, 160 (Tex. App.-El Paso 1999,
pet. ref'd) (applying Rule 44.2(b) harm analysis to erroneous admission of hearsay evidence); see also Armstead v. State,
977 S.W.2d 791, 796 (Tex. App.-Fort Worth 1998, pet. ref'd)(noting that "admission of otherwise inadmissible hearsay is
not constitutional error."). 

A substantial right is affected when the error had a substantial effect and injurious effect or influence in determining the
jury's verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A criminal conviction should not be
overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that
the error did not influence the jury, or had but a slight effect. Johnson, 967 S.W.2d at 417; Rios v. State, 982 S.W.2d 558,
561 (Tex. App.-San Antonio 1998, pet. ref'd). The United States Supreme Court has construed the nearly identical federal
harmless error rule as follows:

If, when all is said and done, the [court's] conviction is sure that the error did not influence the jury, or had but very slight
effect, the verdict and the judgment should stand. . . . But if one cannot say, with fair assurance, after pondering all that
happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the
error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was
enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had
substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.



O'Neal v. McAninch, 513 U.S. 432, 437-38 (1995) (emphasis in original); see also Vega v. State, 32 S.W.3d 897, 905-06
(Tex. App.-Corpus Christi 2000, pet. filed) (citing Kotteakos v. United States, 328 U.S. 759, 776 (1946)). "Grave doubt"
means "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipose as to the harmlessness
of the error." O'Neal, 513 U. S. at 435. The potential harm of improperly admitted evidence may be defused by properly
admitted evidence. King, 953 S.W.2d at 273.

In contrast to the other serious and violent crimes linked to appellant, unauthorized use of a vehicle is a state jail felony,
generally punishable by confinement of one hundred eighty days to two years in a state jail and a fine of up to $10,000. 
SeeTex. Pen. Code Ann. §§ 12.35(a) (Vernon 1994), 31.07(b) (Vernon 1994). There was no allegation that appellant used
violence to acquire the van. On the contrary, the evidence suggested that appellant told the van's owner he wanted to buy
the van, then failed to return it. After he took the van, appellant called the victim from Mexico, and she later recovered the
van.

In light of the entire record, which contains evidence of appellant's forceful invasion of the Zuniga home, his subsequent
brutal murder of Pedro Zuniga in front of his wife and three children, the kidnapping of a woman, the kidnapping and
assault of another man, and the humiliating aggravated robbery of the three mariachis, we can say with fair assurance that
the improper admission of evidence of a non-violent extraneous act of unauthorized use of a vehicle did not influence the
jury's decision to assess punishment of ninety-nine years imprisonment and a $10,000 fine, or had but a slight effect. See
Johnson, 967 S.W.2d at 417. Appellant's third issue is overruled. 

F. Photographs of Victim's Body 


In his fifth issue, appellant contends the trial court erred by admitting State's Exhibit Nos. 17, 18, 19, 20, 21, and 22. (9)
These exhibits are pre-autopsy photographs of the victim's head wounds.

At trial, appellant objected to the admission of the photographs on the basis that their probative value was outweighed by
the prejudicial effect. See Tex. R. Evid. 403. The trial court overruled appellant's objection to the complained-of
photographs. (10)

If the opponent makes a Rule 403 objection, the trial judge must weigh the probativeness of the evidence to see if it is
substantially outweighed by its potential for unfair prejudice, confusion of the issues, misleading the jury, undue delay, or
needless presentation of cumulative evidence. Montgomery v. State, 810 S.W.2d 372, 388 (Tex. Crim. App. 1990) (opin.
on reh'g). In keeping with the presumption of admissibility of relevant evidence, there is also a presumption that relevant
evidence is more probative than prejudicial. Santellan v. State, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997);Montgomery,
810 S.W.2d at 389.

The admission of photographs over the defendant's challenge is within the discretion of the trial court. Sonnier v. State,
913 S.W.2d 511, 518 (Tex. Crim. App. 1995). Rule 403 requires an admissible photograph to possess some probative
value and that its probative value not be substantially outweighed by its inflammatory nature. Santellan, 939 S.W.2d at
169; Long v. State, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991); see also Tex. R. Evid. 403. In determining whether a
photograph is more probative than prejudicial, we consider certain factors including: (1) the number of exhibits offered, (2)
their gruesomeness, (3) their detail, (4) their size, (5) whether they are black and white or color, (6) whether they are
close-up shots, (7) whether the body is naked or clothed, (8) the availability of other means of proof, and (9) other
circumstances unique to the individual case. Santellan, 939 S.W.2d at 172.

An examination of the six photographs reveals that Exhibit Nos. 17, 18, 19, and 20 depict what the pathologist defined as
the entry wound, located just above the victim's forehead on the right side. Exhibit Nos. 21 and 22 depict the exit wound
on the upper left area of the back of the victim's head. While the record before us contains only black-and-white copies of
the original exhibits, the State represents that the original exhibits are in color and are regular-sized photographs, about
three inches by five inches. It is not ascertainable from the photographs whether the victim is unclothed; they depict only
his head. They are not particularly close-up shots, (11) nor are they particularly gruesome. They depict little blood and no
brain matter or exposed bone.

A pathologist testified regarding the cause of death. He described the location and size of the wounds (both the entry and
exit wounds were approximately one centimeter in diameter). However, he was unable to determine the caliber of the
bullet used. The photographs depict an unquestionably large-caliber bullet wound to the victim's head. This fact is
probative of appellant's intent to kill the victim, an element the State was required to prove. See Tex. Pen. Code Ann. §
19.02(Vernon 1994).

 We cannot say the probative value of the photographs is substantially outweighed by their prejudicial effect. We conclude
the trial court did not abuse its discretion in admitting the photographs. Appellant's fifth issue is overruled.

G. Ineffective Assistance of Counsel


In his fourth issue, appellant contends he received ineffective assistance of counsel during trial because his counsel (1)
failed to object to the hearsay cited in his first issue, (2) failed to object to objectionable punishment evidence, and (3)
failed to request a charge on extraneous offenses at the punishment phase.

Claims of ineffective assistance are analyzed under the rule set forth in Strickland v. Washington, 466 U.S. 668 (1984), and
adopted by the Texas courts in Hernandez v. State, 726 S.W.2d 53, 56-56 (Tex. Crim. App. 1986). The Strickland test is
the benchmark for judging whether counsel's conduct has so undermined the proper functioning of the adversarial process
that the trial cannot be relied on as having produced a reliable result. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim.
App. 1999) (citing McFarland v. State, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992). The appellant must first show his
trial counsel's performance was not reasonably effective, falling below an objective standard of reasonableness under the
prevailing professional norms. Strickland, 466 U.S. at 694; Thompson, 9 S.W.3d at 812-13. A showing of deficiency
requires a demonstration that the trial counsel made errors so serious that he was not functioning as the counsel guaranteed
a defendant under the Sixth Amendment. Strickland, 466 U.S. at 687. We must presume that counsel is better positioned
than the appellate court to judge the pragmatism of the particular case, and that counsel made all significant decisions in the
exercise of reasonable professional judgment. Young v. State, 991 S.W.2d 835, 837 (Tex. Crim. App. 1999). There is also
a strong presumption that the trial counsel's conduct was reasonable and constitutes sound trial strategy. Strickland, 466
U.S. at 689; McFarland v. State, 845 S.W.2d at 843. The "reasonably effective assistance" standard does not mean
errorless counsel. Ex parte Felton, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991); Hernandez v. State, 799 S.W.2d 507,
508 (Tex. App.-Corpus Christi 1991, pet. ref'd). 

If the appellant can demonstrate deficient assistance under the first part of the Strickland test, he must then show that there
is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been
different. Strickland, 466 U.S. at 694; Thompson, 9 S.W.3d at 812; Washington v. State, 771 S.W.2d 537, 545 (Tex. Crim.
App. 1989). "A reasonable probability" means "a probability sufficient to undermine confidence in the outcome."
Strickland, 466 U.S. at 694; Thompson, 9 S.W.3d at 812; Ex parte Walker, 777 S.W.2d 427, 430 (Tex. Crim. App. 1989).
The prejudice element requires a showing that the trial counsel's errors were so serious as to deprive the defendant of a fair
trial: one whose result is reliable. Strickland, 466 U.S. at 687. The totality of the representation is evaluated from counsel's
perspective at trial, not his isolated acts or omissions in hindsight. Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim.
App. 1990); Wilkerson v. State, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). 

The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each
case. Ex parte Scott, 581 S.W.2d 181, 182 (Tex. Crim. App. 1979); Stone v. State, 17 S.W.3d 348, 350 (Tex. App.-Corpus
Christi 2000, pet. ref'd). The appellant must prove his claim of ineffective assistance of counsel by a preponderance of the
evidence. Stafford v. State, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). Furthermore, he must show ineffective
assistance firmly rooted in the record. Jackson v. State, 877 S.W.2d 768, 771-72 (Tex. Crim. App. 1994). We may not
speculate as to the reasons behind trial counsel's actions nor should we try to second guess trial counsel's tactical decisions
which do not fall below the objective standard of reasonableness. Young, 991 S.W.2d at 837-38; Solis v. State, 792 S.W.2d
95, 100 (Tex. Crim. App. 1990); Stone, 17 S.W.3d at 350.

1. Trial Counsel's Failure to Object to Admission of Hearsay Evidence


Appellant contends he received ineffective assistance of counsel because his trial counsel failed to object to Deputy
Salazar's testimony that Mrs. Zuniga had told him Angel had shot her husband. The record reflects appellant's trial counsel
objected to the admission of this statement. We have already held in our discussion above that the trial court did not abuse
its discretion by admitting this statement as an excited utterance.

Appellant also complains that his trial counsel was ineffective because he failed to object to Deputy Salazar's testimony that
a "[n]eighbor identified the red truck leaving the scene." Specifically, he complains of the following testimony:

Prosecutor: . . . you interviewed several people that night when you created your report?



Salazar: I interviewed Benita Cantu [a neighbor] and Martha Zuniga.



Prosecutor: Did both of them identify a red truck?



Salazar: Yes.



Prosecutor: Did they - did Martha know who owned the truck or who was in the truck?



Salazar: All she said was that Angel left in a red truck.



It is true that appellant's trial counsel did not object to this testimony. However, even if he had, Salazar's testimony of the
neighbor's identification of a red truck is not objectionable hearsay. Salazar was describing the steps in his investigation of
the murder. One of the pieces of information he apparently relied upon was the neighbor's identification of a red truck at
the crime scene. The statement was not offered to prove the truth of the matter asserted (whether or not there really was a
red truck at the crime scene), but to illustrate a step in the investigation.

An extrajudicial statement which is offered for the purpose of showing what was said rather than for the truth of the matter
stated therein does not constitute hearsay. Dinkins v. State, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995). If an
out-of-court statement is relevant only if the trier of fact believes that the statement was both truthful and accurate, then it is
hearsay. K.B.P. v. State, 902 S.W.2d 88, 98 (Tex. App.-El Paso 1995, no pet.). Here, it does not matter if the neighbor's
statement was true or not. The statement is relevant in understanding the steps of the investigation leading to appellant's
arrest for Pedro Zuniga's murder. To show counsel was ineffective for failing to lodge an objection, appellant must show
that the trial court would have erred in overruling such objection. Vaughn v. State, 931 S.W.2d 564, 566 (Tex. Crim. App.
1996).

Appellant also contends he received ineffective assistance of counsel because his trial counsel failed to object to (1) Deputy
Garza's testimony that Mrs. Zuniga told him at the crime scene that "Angel Valdez had kicked in the front door and shot her
husband," and (2) Deputy Benavidez's testimony that Mrs. Zuniga told him appellant fled in a red pick-up. It is true that
appellant's trial counsel did not object to these two instances of testimony. However, we have already held that Mrs.
Zuniga's statements to the deputies at the crime scene were admissible as excited utterances. To show counsel was
ineffective for failing to lodge an objection, appellant must show that the trial court would have erred in overruling such
objection. Id.

Appellant asserts he received ineffective assistance of counsel because his trial counsel failed to object to Deputy
Benavidez's testimony about appellant's girlfriend's "statement about consent and use of vehicle." The record shows that
when Deputy Benavidez first started to testify about what appellant's girlfriend had told him, appellant objected on hearsay
grounds, and the trial court sustained the objection. Shortly thereafter, the prosecutor asked Benavidez the following:

Prosecutor: Did you get consent to search the pick-up?

Benavidez: Yes, I did.

Prosecutor: Who was that person?

Benavidez: The defendant's live-in girlfriend.

Prosecutor: Did she say whose truck it was?

Benavidez: Hers.

Prosecutor: Did you ask her if the defendant ever used the truck?



Benavidez: Yes, I did.



Prosecutor: And to the best of your knowledge has the defendant ever used the truck?



Benavidez: No, I don't recall that.



It is true that appellant's trial counsel did not object to this testimony. However, it is not objectionable hearsay. Benavidez
testified that he had obtained a consent to search as a step in his investigation. Furthermore, the complained-of passage
contains absolutely no information about appellant's possible use of the red truck. To show counsel was ineffective for
failing to lodge an objection, appellant must show that the trial court would have erred in overruling such objection.
Vaughn, 931 S.W.2d at 566.

Finally, appellant contends he received ineffective assistance of counsel because his trial counsel failed to object to Deputy
Garza's testimony during the punishment phase that the victim of a kidnapping and assault that occurred one day before the
murder of Pedro Zuniga told him that appellant had assaulted him. During the punishment phase, Deputy Garza was called
to testify about his investigation of the kidnapping and assault of Gerardo Zuniga. The State introduced photographs of the
victim's injuries. The trial judge then asked:

The Court: As I understand, the victim in those photographs advised you that who did what?



Garza: Inflicted the injuries.



The Court: Yes.



Garza: Angel Vasquez [sic].



It is true that appellant's counsel did not object to this testimony. However, the next witness was the victim, Gerardo
Zuniga, who testified concerning the details of his kidnapping and assault by appellant. It is well-established that the
improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted
evidence. Anderson v. State, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986); Couchman, 3 S.W.3d at 161. Therefore,
appellant is unable to meet the second prong of the Strickland test, and cannot show that his trial counsel's failure to object
to the hearsay statement amounts to ineffective assistance of counsel.

We hold appellant's trial counsel was not ineffective for failing to lodge objections to the complained-of evidence.

2. Failure to object to objectionable punishment evidence


Appellant contends he received ineffective assistance of counsel during the punishment phase because his counsel failed to
object to the admission of evidence about his aggravated robbery of the three mariachis and his unauthorized use of a
vehicle. We disagree with appellant's contention that trial counsel failed to object to the admission of this evidence. The
record reflects appellant's counsel made numerous objections to the admission of this testimony. Furthermore, we have
held that the admission of the evidence regarding the robberies was properly admitted and that the evidence relating to the
unauthorized use of a vehicle was not properly admitted, but that it did not affect appellant's substantial rights. Therefore,
counsel was not ineffective on this ground.

Appellant also contends he received ineffective assistance of counsel during the punishment phase because his counsel
failed to object to the prosecutor's representation to the trial court that the standard for admission of extraneous offense
evidence was "probable cause." Clearly the prosecutor was mistaken about the proper standard. See Tex. Code Crim. Proc
Ann. art. 37.07(a)(3)(Vernon Supp. 2001) (extraneous offenses must be shown beyond a reasonable doubt to have been
attributable to the defendant). However, appellant has not shown that the trial judge relied on this misstatement of the law
in his decision to admit the evidence. Appellant cannot meet the second prong of Strickland on this issue (that the outcome
would have been different had his counsel objected). Therefore, his claim of ineffective assistance of counsel must fail. 

3. Failure to request a charge on extraneous offenses at punishment


Appellant contends he received ineffective assistance of counsel because his trial counsel failed to request in instruction in
the punishment charge on extraneous offenses. The record shows that the punishment charge contained the following
instruction:

You are instructed that if there is any testimony before you in the case regarding the Defendant having committed offenses
other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for the purpose
of determining the appropriate punishment unless you find and believe beyond a reasonable doubt that the Defendant
committed such other offenses, if any were committed.



This instruction meets the mandates set forth in Huizar, 12 S.W.3d at 484 (jury must be instructed that it cannot consider
evidence of extraneous offenses in determining punishment unless it finds beyond reasonable doubt that offenses are
attributable to defendant). The trial judge has a duty to sua sponte charge the jury on this issue, even if the defendant fails
to request it. Id. We can ascertain no ineffective assistance of counsel here.

The record reflects that appellant's trial counsel filed pretrial motions, actively participated in voir dire, vigorously
cross-examined the State's witnesses, made numerous objections, and raised several defensive issues. Because appellant
did not prove his trial counsel was ineffective, we overrule his fourth issue.

The judgment of the trial court is affirmed.



FEDERICO G. HINOJOSA

Justice





Do not publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this the

19th day of July, 2001.

1. Former Justice Maurice Amidei, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. See Tex. Pen. Code Ann. § 19.02 (Vernon 1994).

3. Salazar v. State, 38 S.W.3d 141, 153 (Tex. Crim. App. 2001).

4. Montgomery v. State, 810 S.W.2d 372, 377 (Tex. Crim. App. 1990) (opin. on reh'g).

5. Mitchell v. State, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996).

6. Sonnier v. State, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995).

7. Appellant's issues are numbered differently throughout his brief. For clarity, we adopt the numbering used in the
argument section of appellant's brief, which was also adopted by the State in its brief.

8. This arrest was apparently for carrying a weapon in a licensed premises.

9. Appellant also complains of State's Exhibit Nos. 24 and 25. These exhibits appear to be photographs of household
items at the crime scene. They cannot be seen as portraying anything gruesome.

10. The trial court excluded one photograph, State's Exhibit No. 23, which is a close-up view of the exit wound.

11. As we noted above, the trial court excluded a very close-up photograph of the exit wound.