**In the Matter of E.M.R., a Juvenile.**

**No. 13–00–100–CV.**

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 2001.

Debra A. Luby, Corpus Christi, for Appellant.

Deanie M. King, Assistant County Attorney, Corpus Christi, for Appellee.

## OPINION

Opinion by Justice DORSEY.

A jury found E.M.R. guilty of delinquent conduct by committing the offense of murder. The trial court assessed a determinate sentence of twenty-two years with a possible transfer to the Texas Department of Criminal Justice–Institutional Division. E.M.R. was thirteen at the time of the offense and fourteen at the time of adjudication. In five points of error, appellant challenges the admissibility of two written statements, contends the trial court erred in failing to order a fitness hearing, and complains that his trial counsel rendered ineffective assistance of counsel. We affirm.

### Background

Sometime around 1:00 a.m. on September 10, 1999, Benjamin Rojas was assaulted and beaten with a stick.[1] Later that morning, the police began an investigation by contacting neighbors in the vicinity. One neighbor told the police that he did not witness the assault, but saw E.M.R. and Nick Ortiz following Rojas, then heard some "loud banging," and saw the boys return.

Sergeant Hugo Stimmler, a Corpus Christi police officer, testified at the suppression hearing that he and another officer, Ray Rivera, went to E.M.R.'s house on September 10th and spoke to E.M.R. and his mother. Stimmler testified they told E.M.R. they needed to talk to him and he agreed to go with them to the police station. Stimmler also testified that E.M.R.'s mother was told that E.M.R. was going to be taken to the police station to talk to him. Stimmler testified that E.M.R.'s mother agreed to the officers taking E.M.R. to the station, and he did not believe that she asked to go along. E.M.R. was taken to the station, and after being warned by a magistrate, gave a written statement implicating Nick Ortiz and denying participation in the assault. The police continued their investigation, including a photo-lineup in which Ortiz and E.M.R. were identified. A few days later, the police took Ortiz into custody and obtained a statement from him; the statement blamed E.M.R. for the assault.

On September 15, 1999, the officers returned to E.M.R.'s house and asked him to go with them to the station because they "needed to talk to him and resolve some things." Stimmler testified he "believe[s]" that Officer Rivera "might have said something to [E.M.R.'s mother] that, you know, we needed to talk a little bit more about the statement we had taken." E.M.R. was taken to the station, where he was again warned by a magistrate. E.M.R. gave a second statement, in which he admitted participating in the beating. Stimmler testified that both statements were given vol-

---

1. Rojas died approximately a week later after his family made the decision to discontinue life support.

untarily. He also testified that the process of obtaining each of the statements took approximately one hour.

E.M.R. was charged with capital murder and murder in the juvenile court. He filed a motion to suppress his two statements, arguing that the statements were made during "custodial interrogations" and without a knowing waiver of his right to remain silent under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and in violation of articles 1.05 and 38.22 of the Texas Code of Criminal Procedure. A pre-trial hearing on the motion to suppress was held on December 1, 1999. At the suppression hearing, E.M.R.'s counsel also argued that the statements had not been "intelligently and knowingly given, pursuant to Section 51.095 of the Texas Family Code." At the conclusion of the hearing, the court stated, "[b]ut in the final. analysis, 51.095 gives fairly simple criteria to evaluate this—the admissibility of these statements. And based, particularly, on the testimony of the two judges,[2] I'm gonna deny the motion to suppress the statements and deny the motion." The order denying the motion to suppress was signed the same day.

E.M.R. pled "not true" and was tried by a jury. The jury found E.M.R. had committed delinquent conduct by committing the offense of murder. E.M.R. waived disposition by the jury and the trial court sentenced him to a determinate sentence of twenty-two years with a possible transfer to the Institutional Division of the Texas Department of Criminal Justice.

E.M.R.'s first and second points of error challenge the admission and use of his written statements at the adjudication hearing. In his first point, E.M.R. contends the trial court erred in admitting the statements because: (1) the statements were inadmissible under section 51.095(a)(1)(C) of the family code because E.M.R.'s waiver of his constitutional and statutory rights was not done knowingly, intelligently, and voluntarily; and (2) admission of the statements also violated E.M.R.'s due process rights because his maturity level and reasoning ability rendered him incapable of voluntarily waiving his constitutional and statutory rights.[3] In his second point of error, E.M.R. argues the statements were inadmissible because they were obtained in violation of section 52.02(b) of the family code. E.M.R. contends he was in custody when his statements were given, and that the State failed to comply with section 52.02(b) by promptly notifying his mother that he was in custody and giving her a statement as to the reason he was in custody. The State argues E.M.R. was not in custody when his statements were taken. It also argues that even if he was in custody, the statements were taken in compliance with all requirements in the family code, were given voluntarily, and were therefore properly admitted. We hold that the trial court correctly admitted the statements.

### I.

In his first two points of error, appellant complains of the trial court overruling his motion to suppress his confessions. In that motion to suppress he alleges that

2. Two municipal court judges, Don Alex and Rudolfo Tamez, testified at the suppression hearing regarding their role in administering warnings to E.M.R.

3. E.M.R.'s special education teacher testified at the suppression hearing that E.M.R. reads at a second or third-grade level. A doctor also testified that he has treated E.M.R. over several years, and that E.M.R. suffers from impulse-control problems, attention deficit hyperactivity disorder, and is bipolar.

"[t]he statements allegedly made by the juvenile/defendant are at issue and were made as a result of custodial interrogation and without a knowing, intelligent and affirmative waiver by the juvenile/defendant of his rights to remain silent...." Section 51.095 of the Family Code is entitled "Admissibility of a statement of a Child" and sets out in detail what is required for a statement of a juvenile to be admissible. The trial court conducted a hearing on appellant's motion to suppress, with a number of witnesses testifying, both for the state and appellant. At issue was whether he understood the warnings he was given. Two municipal judges testified in detail as to the warnings they administered to appellant, as did the police officer. The child's teacher testified that the juvenile was a poor reader and wouldn't understand anything above the third grade level. The child's physician testified that he has a number of disorders, including being bipolar, and was on medication. At the conclusion of the evidence appellant's lawyer argued that the statements were "not intelligently and knowingly given, pursuant to Section 51.095 of the Texas Family Code."

The trial court recognized the issue to be whether § 51.095 was complied with and stated that the section gives fairly simple criteria to evaluate the admissibility of the statements. No where is § 52.02(b) mentioned as a potential basis to suppress the statements.

■ We hold that appellant waived his ability to complain on appeal that his statement should have been suppressed because it was taken in violation of section 52.02(b) of Texas Family Code. See TEX. FAM.CODE ANN. § 52.02(b) (Vernon Supp. 2001). During the hearing on his motion to suppress, appellant argued that his statement should be suppressed because (1) *section 51.095* of the Texas Family

Code was violated, and (2) his statement was not given knowingly and intelligently. See TEX. FAM.CODE ANN. § 51.095 (Vernon Supp.2001). On appeal, however, appellant urges that his statement should have been suppressed because family code section *52.02(b)* was violated. See TEX. FAM. CODE ANN. § 52.02(b) (Vernon Supp.2001). Section 52.02(b) requires that a person who takes a child into custody promptly give notice of his action and a statement of the reason for taking the child into custody to both the child's parent and a juvenile court official. See *id.* The appellant failed to preserve his complaint of a section 52.02(b) violation because he did not adequately notify the trial court of this complaint. See TEX.R.APP. P. 33.1.

Rule 33.1 of the rules of appellate procedure states that as a prerequisite to making a complaint on appeal, the party complaining of error must make an objection to the trial court sufficiently specific to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. See TEX.R.APP. P. 33.1. That was not done in this case. The purpose of the preservation requirement is to ensure that the trial court has a fair opportunity to make the correct ruling. In this case, this was not done. Thus, we hold that appellant waived his complaint regarding section 52.02(b).

Appellant argues that *In re C.O.S.* requires that we address this issue regardless of whether it was properly preserved. However, *In re C.O.S.* presented a distinguishable situation. *C.O.S.*, 988 S.W.2d 760 (Tex.1999). The holding there was "when a statute directs a juvenile court to take certain action, the failure of the juvenile court to do so may be raised for the first time on appeal unless the juvenile defendant expressly waived the statutory requirement." *Id.* at 767. There the trial court did not explain the juvenile's right to

confront witnesses and that his juvenile record might be used in future proceedings as mandated by § 54.04(b) of the Family Code. The court followed the reasoning of the Court of Criminal Appeals in *Marin v. State*, 851 S.W.2d 275 (Tex.Crim. App.1993) in which that court divided rights of accused into three general categories: fundamental, forfeitable, and those that can be waived, but must be done so knowingly. *Marin* and *C.O.S.* both involved the failure of counsel to object to the trial court's actions, and questioned whether an objection was necessary to preserve error under the circumstances. The rule is not applicable here, where appellant moved to suppress his statements, but on a ground very different from the one urged on appeal.

## II.

Even were we to hold that appellant's complaints regarding the alleged section 52.02(b) violations were not waived, we would still affirm the trial court's actions. Appellant argues that the trial court erred in refusing to suppress his statement because it was taken under circumstances contravening section 52.02(b). That is, appellant contends that the officers failed to promptly notify his mother of the reasons for taking him into custody. However, we would hold that E.M.R. was not in custody for purposes of that section when he gave his statement so that the provisions of section 52.02(b) were not implicated.

Section 52.02(b) states:

A person taking a child into custody shall promptly give notice of his action and a statement of the reason for taking the child into custody, to:

(1) the child's parent, guardian, or custodian; and

(2) the office or official designated by the juvenile court.

*Id.* That subsection should not be read in isolation from its surroundings. The section quoted is contained in the chapter of the family code relating to proceedings before and including referral to juvenile court. *See* TEX. FAM.CODE ANN. ch. 52 *et seq.*

Section 52.01 of that chapter outlines the circumstances in which taking a child into custody is allowed. *See id.* at § 52.01(a). A child may be taken into custody (1) pursuant to an order of the juvenile court, (2) pursuant to the laws of arrest; (3) by a law-enforcement officer, if there is probable cause to believe that the child has either engaged in the violation of a penal law or engaged in delinquent conduct; (4) by a probation officer if there is probable cause the juvenile violated a condition of his probation; or (5) pursuant to a "directive to apprehend" issued under section 52.015 (similar to an arrest warrant). *Id.* Section 52.01 also contains a provision expressly recognizing that "in custody" under this chapter is not an arrest for all purposes. *See id.* at 52.01(b). Subsection (b) of 52.01 states:

The taking of a child into custody is not an arrest except for the purpose of determining the validity of taking him into custody or the validity of a search under the laws and constitution of this state or of the United States.

*Id.*

In this case, the police officers testified that they did not have probable cause to arrest E.M.R. until he made the statement on September 15th implicating himself. They testified that only after taking that statement did they take E.M.R. into custody. They testified that all E.M.R.'s statements up until that point were given freely and voluntarily, and that prior to that time, he had not been detained or restrained in any way. We hold that the officers had no duty to notify

E.M.R.'s parent until *after* he gave the incriminating statement and they placed him into custody.

Moreover, we do not agree that section 52.02 should be applied every time a police officer takes a juvenile to the police station for questioning regarding a crime. *Cf. Roquemore v. State,* 11 S.W.3d 395, 399–400 (Tex.App.—Houston [1st Dist.] 2000, pet. granted Sept. 13, 2000) (holding that statement taken without first complying with section 52.02 admissible because even though suspect was "in custody" at time statement was given, statement was not a result of police interrogation). The purpose of chapter 52 is to prevent a juvenile from being wrongfully taken into police custody and to prevent the juvenile from being wrongfully held in custody for long periods of time. *See* TEX. FAM.CODE ANN. § 52.01–52.03 (Vernon Supp.2001). Under that chapter, a person taking a child into custody, must "without unnecessary delay and without first taking the child to any place other than a juvenile processing office," either (1) release the child to a parent, (2) bring the child before a juvenile court official if there is probable cause the child engaged in delinquent conduct, (3) bring the child to a juvenile detention facility, (4) bring the child to a secure detention facility complying with other sections of the juvenile code, (5) bring the child to a medical facility (if indicated), or (6) dispose of the case. TEX. FAM.CODE ANN. § 52.02(a) (Vernon 2001). That section also contains the parental notification requirement that the majority contends was violated in this case, requiring suppression of E.M.R.'s statement. *See id.*

■ Appellant relies on a case from the Austin Court of Appeals, *In re C.R.,* for the proposition that a police officer taking a child into custody must advise the parent that the child is being taken *into custody,* and not merely advise the parent that the

officer is taking the child for questioning. *See In re C.R.,* 995 S.W.2d 778, 783 (Tex. App.—Austin 1999, pet. denied). Additionally, that case holds that the officer must advise the parents of the reasons for taking the child. *Id.* However, the Austin court did not rule on the question of whether the child was taken into custody when he was initially picked up, or only after he had implicated himself during questioning. *Id.* at 782. We would hold that merely taking a child to the station for questioning does not amount to taking a child into custody for purposes of section 52.02.

Practical reasons dictate that 52.02(b) should not be strictly applied to situations where police officers take a child to the station for questioning. When an officer takes a juvenile to the station for questioning, the officer does not have probable cause to believe that the juvenile has committed in a crime. At that point, what is the officer to tell the child's parent? Here, the officers testified that they told the child's parent they were taking him to the station for questioning. That was the truth. They did not charge him until he gave a statement implicating himself in the crime. We would hold that the mandate of section 52.02(b) was satisfied in this case.

■ Likewise, because we have held that appellant was not in custody at the time he made the statements for purposes of section 52.02, we also hold that the statements were not taken in contravention of section 51.095(a)(1)(C) because appellant was not in custody at the time they were taken. We overrule appellant's first and second points of error.

In his third point of error, appellant complains that the trial court erred in failing to *sua sponte* conduct a hearing regarding appellant's mental competency pursuant to Texas Family Code sections 55.01 and 55.04(c). We do not agree that

the trial court erred by failing to conduct such a hearing.

Family code section 55.01 does not describe a procedure for a competency hearing, but merely states that "[f]or purposes of this chapter, a child who is described as having a mental illness means a child who suffers from mental illness as defined by Section 571.003, Health and Safety Code." TEX. FAM.CODE ANN. § 55.01. We presume that appellant's reference is actually to family code section 55.11. That section provides a procedure whereby, upon a motion by a party, the juvenile court may determine whether a child who is alleged to have or found to have engaged in delinquent conduct has a mental illness. *Id.* § 55.11.

We also believe the appellant's second family code section reference is inaccurate. Family code section 55.04 has been renumbered, and is now located at section 55.31. That section provides a procedure whereby a trial court must, upon motion of a party, determine whether probable cause exists to believe that a child is unfit to proceed as a result of mental illness or mental retardation. *Id.* § 55.31. Under that section, "[i]f the court determines that probable cause exists to believe that the child is unfit to proceed, the court shall temporarily stay the juvenile court proceedings and immediately order the child to be examined under Section 51.20." *Id.* § 55.31(c).

■ However, neither of those statutes requires a judge to hold such a hearing sua sponte. We refuse to impose such a duty on the trial court in the absence of such a statutory mandate. The case cited to by appellant, *Matter of B.J.*, may indicate that when an issue of mental illness is clearly raised in the record, the trial court has the *power* to order a mental competency hearing sua sponte. *See Matter of B.J.*, 960 S.W.2d 216, 220–21 (Tex.App.—San Antonio 1997, no pet.). However, in that case,

the San Antonio court did not go so far as to hold the trial court erred by failing to hold such a hearing. We likewise refuse to make that holding. We overrule appellant's third point of error.

■ By his fourth point of error, appellant alleges that he received ineffective assistance of counsel because of his counsel's failure to object to the admission of appellant's written statements on grounds they were taken in violation of family code sections 52.01, 52.02, and 52.025. Because we have already held that the statements were not taken improperly under those sections, we overrule this point of error.

■ Finally, appellant contends that he received ineffective assistance of counsel because counsel failed to request a charge on a lesser included offense. Appellant was tried for murder, and he complains his trial counsel was ineffective by failing to request that the jury charge contained in the lesser included offense of aggravated assault. Ineffective assistance claims must be firmly rooted in the record. *Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex.Crim.App.1994). In the absence of evidence to the contrary, we will presume that actions taken were a part of trial strategy. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994). Because this point is raised in the context of a direct appeal and no motion for new trial was filed, the record does not contain any evidence showing that trial counsel's failure to request the lesser included offense in the jury charge was not a part of trial strategy. Accordingly, we overrule appellant's point of error.

Because we have overruled all appellant's points of error, we affirm the judgment of the trial court.

Dissenting opinion by Justice YAÑEZ.

Concurring opinion by Justice CASTILLO.

CASTILLO, Justice, concurring.

I agree with the majority opinion on issues one, three and five. However I join in the reasoning in part II of the dissent by Justice Yañez and would find that: 1) the juvenile was in custody; 2) his family code section 52.02(b) rights were violated; and 3) he was harmed by the admission of his confession. I agree with the majority that appellant's second issue on appeal, relating to the section 52.02(b) violation, may not be addressed because the issue was not preserved for our review and so I concur in the disposition of this issue without adopting the portion of the opinion concluding that appellant was not in custody. As I agree that, under the facts of this case, appellant was in custody and his section 52.02(b) rights were violated, I would find that good grounds existed on which to urge a motion to suppress his confession which were not raised before the trial court. Accordingly, I respectfully dissent from the majority's reasoning as to issue four. The record before us, however, is insufficient to overcome the strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Thompson v. State,* 9 S.W.3d 808, 813–14 (Tex.Crim.App.1999); *Jackson v. State,* 973 S.W.2d 954, 957 (Tex.Crim.App.1998)(noting that in most cases, the record on direct appeal is not adequate to review claims of ineffective assistance of counsel). I therefore also concur in the majority's disposition only as to issue four.

YAÑEZ, Justice, dissenting.

Because I would hold that E.M.R. was in custody at the time he gave his statements, and because the State failed to show that the statements were taken in compliance with section 52.02(b) of the family code, I respectfully dissent.

**Standard of Review**

At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ballard,* 987 S.W.2d 889, 891 (Tex.Crim.App. 1999); *Vega v. State,* 32 S.W.3d 897, 899 (Tex.App.—Corpus Christi, 2000, pet. filed); *Childs v. State,* 21 S.W.3d 631, 637 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd); *In re L.R.,* 975 S.W.2d 656, 658 (Tex.App.—San Antonio 1998, no pet.). Consequently, we view the evidence in the light most favorable to the trial court's ruling and afford almost total deference to its findings if they are supported by the record. *Maestas v. State,* 987 S.W.2d 59, 62 (Tex.Crim.App.1999); *Vega,* 32 S.W.3d at 899; *Childs,* 21 S.W.3d at 637; *In re L.M.,* 993 S.W.2d 276, 286 (Tex.App.—Austin 1999, pet. denied); *In re A.D.D.,* 974 S.W.2d 299, 305 (Tex.App.—San Antonio 1998, no pet.). Furthermore, the appellate court must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996). The same amount of deference must be afforded to the trial court's rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Maestas,* 987 S.W.2d at 62; *Vega,* 32 S.W.3d at 899. However, we review *de novo* "mixed questions of law and fact" not falling within this category. *Maestas,* 987 S.W.2d at 62; *Vega,* 32 S.W.3d at 899; *Childs,* 21 S.W.3d at 637; *In re L.M.,* 993 S.W.2d at 286; *In re A.D.D.,* 974 S.W.2d at 305.

On appellate review, we must examine the record as it existed at the time of the suppression hearing. *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex.Crim.App.2000). In the present case, the issue of whether the officers complied with the statutory requirements of the family code is a mixed question of law and fact. However, because there is no disagreement about the facts or credibility of the witnesses regarding the evidence adduced at the suppression hearing,[1] the resolution of the issue does not turn on an evaluation of witness credibility or demeanor, and *de novo* review is appropriate. *See Jeffley v. State*, 38 S.W.3d 847, 853 (Tex.App.—Houston [1st Dist.] 2001, no pet.) (holding *de novo* review proper where issue of custody does not turn on credibility or demeanor of witnesses).

## Part I. Waiver

The majority holds that E.M.R.'s right to complain on appeal of a section 52.02(b) violation was waived because he did not specifically argue a section 52.02(b) violation at the suppression hearing. Although E.M.R. argued at the hearing that his statements were inadmissible because they were obtained in violation of the family code,[2] he did not specifically argue inadmissibility based on a violation of section 52.02(b). However, the State did not raise the argument, now relied on by the majority, that E.M.R. waived his section 52.02(b) claim by failing to raise it before the trial court. Accordingly, I would decline to address *sua sponte* an argument that was neither urged by the State nor briefed on appeal.

Moreover, I conclude that because E.M.R. did not expressly waive compliance with section 52.02(b), he may raise his section 52.02(b) claim for the first time on appeal. *See In re C.O.S.*, 988 S.W.2d 760, 767 (Tex.1999) (holding failure of juvenile court to provide statutorily required action may be raised for first time on appeal unless juvenile expressly waived statutory requirement); *see also, Childs v. State*, 21 S.W.3d 631, 638 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd) (holding rights and requirements protecting juveniles in family code fall into category of rights which must be implemented unless expressly waived); *but see, Jeffley*, 38 S.W.3d at 853 (holding juvenile defendant waived review of section 52.02 violation); *Hill v. State*, No. 12–00–00172–CR, 2001 WL 493275, at *6–7, —— S.W.3d ——, —— (Tex.App.—Tyler May 9, 2001) (no pet. h.) (holding

---

1. Although the appellate court only considers testimony from the suppression hearing, I would note that at trial, E.M.R. and his mother testified that on each occasion the police came to the house, E.M.R.'s mother asked if she could accompany her son to the police station and was told she could not. At the suppression hearing, Officer Stimmler testified that E.M.R.'s mother was "free to come, if she wanted to," but could not recall whether she had asked to come along.

2. E.M.R. argued at the hearing that his statements were not intelligently and knowingly given, pursuant to section 51.095 of the family code. Section 51.095(a)(1)(C) provides:

> (a) Notwithstanding Section 51.09, the statement of a child is admissible in evidence in any future proceeding concerning

the matter about which the statement was given if:
> (1) the statement is made in writing under a circumstance described by Subsection (d) and:
> \* \* \*
> (C) the child knowingly, intelligently, and voluntarily waives these rights before and during the making of the statement and signs the statement in the presence of a magistrate; ...

Tex. Fam.Code Ann. § 51.095(a)(1)(C) (Vernon Supp.2001). The circumstances described in "Subsection (d)" include, among others, while a child is in the custody of an officer. *See* Tex. Fam.Code Ann. § 51.095(d)(2) (Vernon Supp.2001).

juvenile waived alleged section 52.02(a) violation by failing to raise issue in motion to suppress).

*In re C.O.S.* holds that there are three categories of rights and requirements used in determining whether error may be raised for the first time on appeal. *See In re C.O.S.*, 988 S.W.2d at 765–767. The first set of rights are those that are considered so fundamental that implementation of these requirements is not optional and cannot, therefore, be waived or forfeited by the parties. *See id.* at 765; *Marin v. State*, 851 S.W.2d 275, 279 (Tex.Crim.App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim. App.1997), and *Matchett v. State*, 941 S.W.2d 922, 928 (Tex.Crim.App.1996). The second category of rights are those that must be implemented by the system unless expressly waived. *See In re C.O.S.*, 988 S.W.2d at 766; *Marin*, 851 S.W.2d at 278–79. These rights are "not forfeitable," meaning they cannot be lost by inaction, but are "waivable" if the waiver is affirmatively, plainly, freely, and intelligently made. *See In re C.O.S.*, 988 S.W.2d at 766; *Marin*, 851 S.W.2d at 279–80. These include rights or requirements embodied in a statute that direct a trial court in a specific manner. *See In re C.O.S.*, 988 S.W.2d at 766. The third set of rights are those that the trial court has no duty to enforce unless requested. *See In re C.O.S.*, 988 S.W.2d at 765; *Marin*, 851 S.W.2d at 279. The law of procedural default applies to this last category. *See In re C.O.S.*, 988 S.W.2d at 767 (quoting *Marin*, 851 S.W.2d at 279).

The majority contends that *Marin* and *In re C.O.S.* are distinguishable because in the present case, E.M.R. urged the trial court to suppress his statements on a *different ground* than he now urges on appeal; in *Marin* and *In re C.O.S.*, the issue was whether error was preserved where *no* objection was raised to the trial court. *See Marin*, 851 S.W.2d at 277; *In re C.O.S.*, 988 S.W.2d at 763. The majority relies on Texas Rule of Appellate Procedure 33.1 in arguing that E.M.R. failed to preserve error by failing to adequately notify the trial court of his complaint. *See* Tex.R.App. P. 33.1. In *Marin*, however, the court of criminal appeals expressly held that former rule 52(a) (now Tex. R.App. P. 33.1) did not apply to "waivable" rights that had not been expressly waived. *Marin*, *851 S.W.2d* at 280 ("The rule [now 33.1] does not apply to rights which are waivable only or to absolute systemic requirements, the violation of which may still be raised for the first time on appeal."). Thus, the majority's reliance on rule 33.1 to support its holding that E.M.R. waived his section 52.02(b) claim is misplaced.

## Part II. Custody and Section 52.02(b) Violation

In his second point of error, E.M.R. argues that his statements should have been suppressed because the police did not promptly notify his mother as required by section 52.02(b) of the family code. Because the parental notification requirements of section 52.02(b) apply to "[a] person taking a child *into custody*," *see* Tex. Fam.Code Ann. § 52.02(b) (Vernon Supp.2001) (emphasis added), it is necessary to first determine whether E.M.R. was in custody when the statements were taken.

### A. Custody

E.M.R. contends he was in the custody of the police from the time they picked him up until they dropped him off at his mother's house on September 10th, and from the time they picked him up and delivered him to juvenile detention on September 15th. The State argues that the notification requirements of section 52.02(b) were

not triggered because E.M.R. was not in custody until after he gave his second statement. The State further argues that even if section 52.02(b) was invoked, it was not violated because E.M.R.'s mother was aware that he had been taken to the station for questioning. The State argues that especially after giving his statement on September 10th, E.M.R. and his mother "knew the process" when the police returned on September 15th. The State also argues that section 52.02(b) merely requires "notice" to, not the presence of, a parent.

In *In re L.M.*, 993 S.W.2d 276, 287 (Tex.App.—Austin 1999, pet. denied), the Austin Court of Appeals distinguished the standard applicable to adults from the standard applicable to juveniles in determining issues of when an individual is in custody. The court noted:

> In Texas, the standard used to answer this inquiry in cases involving adults is clear: "a person is 'in custody' only if, under the circumstances, a *reasonable person* would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim.App.1996) (emphasis added) (citing *Stansbury v. California*, 511 U.S. 318, 322–24, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)). The standard to be applied to juveniles, however, is not so well defined.

*Id.* After discussing the development of a "reasonable juvenile" standard in other jurisdictions, the Austin court adopted a standard which expressly provides for consideration of age under the reasonable-person standard. *Id.* at 289. I agree with the approach adopted in *In re L.M.* Accordingly, I would adopt the following

standard for determining whether a juvenile is in custody,: "whether, based upon the objective circumstances, a reasonable child of the same age would believe her freedom of movement was significantly restricted." *Id.; see also, Jeffley,* 38 S.W.3d at 855 (adopting "reasonable child" standard for determining whether a juvenile is in custody).

The record reflects that the circumstances and procedures surrounding the taking of E.M.R.'s statements on September 10th and September 15th were similar. On both occasions, Officers Stimmler and Rivera went to E.M.R.'s home, spoke briefly to him and his mother, drove him to the police station, took him before a magistrate to administer the required warnings, and questioned him. Stimmler testified that E.M.R. agreed to go to the station and was cooperative in giving the statements. Both officers questioned E.M.R. in an interview room at the station. The officers were wearing their service revolvers during the questioning. E.M.R. was not handcuffed at any time prior to the signing of his second statement.[3] Stimmler testified that both statements were given freely and voluntarily. He also testified that E.M.R. made no requests that were denied, and that if he had asked to go to the bathroom, "we can go with him." Approximately twenty-five police officers were on duty at the station when E.M.R. gave his statements. In characterizing E.M.R.'s trips to the station, Stimmler testified that he and Rivera "asked" E.M.R. to come, and also that the officers "told" E.M.R. that they needed to talk to him.

Judge Donald Alex, a municipal court judge, testified at the suppression hearing that he administered the initial warnings

---

3. The record of the adjudication hearing reflects that E.M.R. was photographed and fingerprinted.

to E.M.R. on September 10th and 15th, prior to each of the statements. On cross-examination, Judge Alex testified as follows:

Q [Defense counsel]: Okay. Was [E.M.R.] free to leave once the meeting between you and he began?

A [Alex]: That's not my concern, sir. He's in the custody of a police officer.

Q: Okay. So would it be fair to say that he was in custody?

A: Yes, sir.

However, on redirect by the State, Judge Alex testified as follows:

Q [State]: When you said, "in custody," you mean the police officer's in charge?

A [Alex]: In charge.

Q: And when you're referring to legal custody of some kind or—

A: Well, you know, we don't know the status. We are there as magistrates. We don't know what the status is, a good many times, as to what's going on.

Q: So you have no idea whether they've been arrested or not, or in custody or not?

A: No. You're correct.

On recross, by defense counsel, Judge Alex testified:

Q [Defense counsel]: Okay. And I think you said earlier that once your meeting with him began that he was not free to leave, true?

A [Alex]: I would assume so, sir. I have never had one walk out on me, yet.

On redirect, the State asked:

Q [State]: If one wanted to [walk out], would you do anything about it?

A: I would stop him.

Q: You would stop him from walking out?

A: Yeah, if they're brought in with a police officer. I think they're in the custody of that officer. And, occasionally, the officer is not in there with us, the officer may be around the corner or, the officer may be somewhere else, and as far as I'm concerned, if they're brought in by an officer, they're in custody. Now, to what degree, or whatever,— But, as you note here just a last week or so they had another person just kind of wander out of the police station.

Q: So if the police officer wanted to let them walk out, that was up to them, but you're not going to.

A: If a police officer wants to let them walk out, that's—that's fine.

There is no evidence that E.M.R. was told during the questioning that he was free to leave the interview room or the police station. Although he apparently made no requests, there is no evidence that he was told he could call his mother or any other adult. By the time the second statement was taken, E.M.R. and Ortiz had been identified in a photo lineup, the police had obtained a witness statement implicating Ortiz and E.M.R., and Ortiz had given a statement blaming everything on E.M.R. Stimmler testified that when E.M.R. was questioned again on the 15th, "[w]e pretty-much told him, you know, we got statements from Nick, statements from this other lady, that he had been picked out by Mr. Franco, and wanted to know what the—wanted to know the whole truth. And that's when he gave us the second statement." Based on the objective circumstances outlined above, a reasonable thirteen-year-old would believe that his freedom of movement was significantly restricted. Consequently, I would hold that E.M.R. was in custody at the time he gave his statements.

## B. Section 52.02(b) Violation

Having determined that E.M.R. was in custody, the next issue is whether a viola-

tion of section 52.02(b) occurred. This Court recently noted:

> The court of criminal appeals has recently reaffirmed that law enforcement personnel must strictly follow the requirements of the family code when dealing with juvenile suspects. The court stated:
>
>> The Legislature has set forth very specific actions which a law enforcement officer must take when arresting a juvenile. We are aware of the disturbing increase in juvenile crime in our state, and we are sympathetic to law enforcement's efforts to deal with violent juvenile offenders. Nevertheless, we must not ignore the Legislature's mandatory provisions regarding the arrest of juveniles. We informed the citizenry, a decade ago in a unanimous opinion, of the Legislature's clear intent to reduce an officer's impact on a juvenile in custody. Today we remind police officers of the Family Code's strict requirements.

*Vega,* 32 S.W.3d at 904–05 (quoting *Le v. State,* 993 S.W.2d 650, 655 (Tex.Crim.App. 1999) (footnotes omitted) (holding a juvenile murder suspect's confession inadmissible because of failure of police to process him in accordance with family code provisions)); *see also, In the Matter of R.R.,* 931 S.W.2d 11, 14 (Tex.App.—Corpus Christi 1996, no pet.) (police officers, courts and others involved with juveniles are bound to comply with the detailed and explicit procedures set out in the family code); *accord In the Interest of D.Z.,* 869 S.W.2d 561, 564 (Tex.App.—Corpus Christi 1993, writ denied).

The State had the burden to show that E.M.R.'s statements were taken in compliance with section 52.02(b) of the family code. *In re C.R.,* 995 S.W.2d 778, 783 (Tex.App.—Austin 1999, pet. denied) (holding juvenile statement inadmissible where record contained no evidence that statement was obtained in compliance with section 52.02(b)); *In the Matter of R.R.,* 931 S.W.2d at 14 (Tex.App.—Corpus Christi 1996, no pet.) (holding juvenile statement inadmissible where State failed to prove compliance with procedures of family code).

Neither E.M.R. nor his mother testified at the suppression hearing. Stimmler testified that when he and Rivera picked E.M.R. up on September 10th, E.M.R.'s mother knew E.M.R. was going with them to the station. When asked whether E.M.R.'s mother wanted to go along, Stimmler responded, "I don't believe that she did, because we told her, he was gonna be taken to the police station and talking to him [sic], and—." With regard to what E.M.R.'s mother was told on September 15th, Stimmler testified:

> Q [State]: You said you told [E.M.R.] you needed to resolve some things. Did you indicate to the mother and to [E.M.R.] at the house that there were some conflicts?
>
> A: I believe we did. I think Rivera might have said something to the mother that, you know, we needed to talk a little bit more about the statement we had taken.

The record contains no other evidence regarding what was said to E.M.R.'s mother. Rivera did not testify at the suppression hearing or at trial. Stimmler testified that after E.M.R.'s second statement was taken, he called the juvenile prosecutor and was told to take E.M.R. into custody. Thereafter, E.M.R. was taken to the detention facility.

E.M.R. relies on *In re C.R.,* 995 S.W.2d at 778, in support of his argument that section 52.02(b) was violated. In that case, the Austin Court of Appeals held a fifteen-year-old juvenile's statement inadmissible because the State failed to prove that the

officers had complied with the parental notification requirements of section 52.02(b). As in *In re C.R.*, the State argues in the present case that no violation of section 52.02(b) occurred because: (1) E.M.R.'s mother was present when the police contacted E.M.R. and knew he had been taken to the police station; and (2) section 52.02(b) merely requires parental notification, not that a parent must be present when a juvenile chooses to waive his rights and give a statement. Both arguments were rejected by the court in *In re C.R.* *In re C.R,* 995 S.W.2d at 783–84. The court "reject[ed] the proposition that being aware that one's child has 'gone with police officers to the police station' is the same as being aware that one's child is in custody for a criminal offense." *Id.* at 784. I agree. On both occasions that E.M.R. was picked up for questioning, the officers knew he was a suspect in an aggravated assault. E.M.R.'s mother was only told, however, that her son was being taken to the police station because the officers "were going to be needing to talk with him." On the 15th, the officers "might" have told her that they needed to talk to E.M.R. "a little bit more" about his earlier statement. Although section 52.02(b) does not require a parent to be present when a child chooses to waive his rights and give a statement, it does require "prompt" notice to a parent that a child has been taken into custody and the reasons why. TEX. FAM.CODE ANN. 52.02(b) (Vernon Supp.2001). Here, the State presented no evidence that E.M.R.'s statements were obtained in compliance with section 52.02(b) of the family code.

Section 54.03(e) of the family code provides that "[a] child alleged to have engaged in delinquent conduct ... need not be a witness against nor otherwise incriminate himself. *An extrajudicial statement which was obtained without fulfilling the requirements of this title ... may not be used in an adjudication hearing.*" TEX. FAM.CODE ANN. § 54.03(e) (emphasis added). I would hold that the trial court abused its discretion when it denied E.M.R.'s motion to suppress and improperly admitted his written statements into evidence at trial. *See In re C.R.,* 995 S.W.2d at 785; *In re R.R.,* 931 S.W.2d at 14.

The majority argues that section 52.02(b) is inapplicable to the present case because E.M.R. was not in custody until *after* he gave his September 15th statement implicating himself. Citing *Roquemore v. State,* 11 S.W.3d 395, 399–400 (Tex.App.—Houston [1st Dist.] 2000, pet. granted), the majority contends that the requirements of section 52.02 are not triggered "every time a police officer takes a juvenile to the police station for questioning for a crime." In *Roquemore,* the court found that although the juvenile defendant was in custody when he told investigating officers of his involvement in the crime, his statements were nonetheless admissible because the statements were made on the defendant's own initiative and were not the result of any custodial interrogation by the police. *Id.* at 400. In *Roquemore,* the juvenile defendant was arrested, taken to a police car, and immediately after being advised of his rights, told the police he wanted to cooperate and admitted his involvement in the crime. *Id.* at 398. Based on these facts, the *Roquemore* court concluded that the statements were not inadmissible based on a violation of section 52.02 because they "sprang from appellant's own initiative" and not "from custodial interrogation or from the fact of custody itself." *Id.* at 400. In the case before this Court, E.M.R.'s statements did not spring from his own initiative, but instead, were elicited by the police as a result of questioning that took place on two separate occasions, each of which lasted about

an hour, in an interview room at the police station. Thus, I conclude that the majority's reliance on *Roquemore* is misplaced.

## C. Harm Analysis

Having determined that the trial court erred in failing to suppress E.M.R.'s statements, I would next consider whether he was harmed by the improperly admitted evidence under Texas Rule of Appellate Procedure 44.2 governing reversible error in criminal cases. *See In re C.R.*, 995 S.W.2d at 786; *In re D.Z.*, 869 S.W.2d at 566 (Tex.App.—Corpus Christi 1993, writ denied). Rule 44.2 provides two standards, one for constitutional error and a more lenient standard applicable to other errors. *See* Tex.R.App. P. 44.2(a), (b). Even under the more lenient standard, which requires us to disregard non-constitutional error unless it affects substantial rights of the defendant, *see* Tex.R.App. P. 44.2(b), I would conclude E.M.R. was harmed.

A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Vega*, 32 S.W.3d at 905 (citing *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim. App.1997)); *In re C.R.*, 995 S.W.2d at 786. A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Vega*, 32 S.W.3d at 905 (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *Rios v. State*, 982 S.W.2d 558, 561 (Tex.App.—San Antonio 1998, pet. ref'd)). The United States Supreme Court has construed the nearly identical federal harmless error rule as follows:

> If, when all is said and done, the [court's] conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand.... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, *or if one is left in grave doubt*, the conviction cannot stand.

*Id.* (quoting *O'Neal v. McAninch*, 513 U.S. 432, 437–38, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)) (emphasis in original). "Grave doubt" means "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435, 115 S.Ct. 992.

Because of the potentially dramatic effect of a written confession on the decision-making process of a jury, I have grave doubts that the introduction of E.M.R.'s written statements had no effect on the outcome of the proceeding. *See Vega*, 32 S.W.3d at 906; *In re C.R.*, 995 S.W.2d at 786–87.

The statement given by E.M.R. on September 10th read as follows:

> My name is [E.M.R.]. I am 13 years old, born on 12/09/85. I live at [address]. I go to Driscoll Middle School. I am in the 8th grade. On 09/09/99, sometime after 10:00 p.m., I went over to Nick Ortiz's house by the corner of Mexico and Mestina. I think it is a brown house. Nick and his uncle Chris were drinking and they were drunk. This old man walked by the house and Nick said something to them. The old man picked up a stick, and he started

walking away. The man tripped and fell down. Nick went over and picked up the stick and he hit the man in the head two or three times. Nick went through the man's pockets, but I don't know if he got anything out of his pockets. I stayed by the gate by the alley and I didn't do anything to this man. We both ran back to Nick's mom's house and then I went home. This statement was taken by Sgt. Stimmler and is true and correct.

The statement given by E.M.R. on September 15th read as follows:

My name is [E.M.R.] and I am 13 years of age, my date of birth is 12/09/85. I live at [address]. I'm in the 8th grade at Driscoll Middle School. On 09/10/99, I had given a statement about what Nick Ortiz had don't [sic] to that old man. I had left out that I had hit the man a couple of times too. I only used my hands. Nick used a stick on this man. He went through the man's pockets and took his wallet. I didn't see if he got any money or not. Nick took the cards in the wallet and threw them down the sewer by Jessica's house. This is the first corner house by Nick's. Nick gave Jessica the wallet. There was a Lone Star card in it, along with a piece of paper, Jessica got that. Nick had given me a long Swiss Army knife, after we had beat up the man. I gave the knife to Nick's mom and then I went home. This statement is true and correct to the best of my knowledge.

E.M.R.'s testimony at trial was essentially consistent with his September 10th statement. He testified he was at Ortiz's house with several friends shortly before the incident occurred, that he left to return home, and as he walked through the alley, saw Ortiz follow Rojas and beat him with a stick. E.M.R. testified he did not participate in the beating in any way, and did not

know it was going to occur. He did nothing to intervene, and was scared because Ortiz was "out of control." He testified he changed his statement on the 15th because between the 10th and 15th, Ortiz repeatedly called E.M.R. and threatened to beat up his family and have his house burned down unless E.M.R. took the blame for the beating. One of the State's witnesses testified that he saw Ortiz and E.M.R. running in the direction Rojas was seen walking. Another witness testified she saw Ortiz and E.M.R. going through a wallet. No one claimed to have witnessed the attack. The State presented no forensic evidence linking E.M.R. to the attack. There was no evidence that E.M.R.'s fingerprints were found on the stick, nor any evidence of bloodstains found on his clothing.

After examining the record as a whole, I cannot say with fair assurance that the erroneous admission of E.M.R.'s written statements did not influence the jury, or had but a slight effect. *In re C.R.*, 995 S.W.2d at 787. I would therefore conclude that the denial of E.M.R.'s motion to suppress and the admission of his statements at trial affected E.M.R.'s substantial rights and therefore constitutes reversible error. Accordingly, I would sustain E.M.R.'s second point of error. I would reverse the judgment of delinquency and remand the cause to the trial court for further proceedings.

Because I would hold that section 52.02(b) was violated and the violation was harmful, I would not address E.M.R.'s remaining points on appeal. *See* Tex.R.App. P. 47.1.