**In the Matter of J.K.N.**

No. 2–02–270–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 14, 2003.

Lisa Mullen, Fort Worth, for Appellant.

Tim Curry, Crim. D.A., Charles M. Mallin, Asst. Crim. D.A. and Chief of Appellate Division, David M. Curl, Anne Swenson, Sherry Whelchel, Asst. Crim. D.As., Fort Worth, for Appellee.

Panel F: HOLMAN, GARDNER, and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

Based upon a stipulation of evidence demonstrating J.K.N.'s unauthorized use of a motor vehicle, the juvenile court adjudicated Appellant J.K.N. delinquent and committed him to an indeterminate sentence in the Texas Youth Commission (TYC). In three points, J.K.N. complains that: the trial court erred by failing to order a psychiatric examination to determine his fitness to proceed; the evidence is insufficient to support the findings required for disposition and commitment to TYC; and the judgment and order of commitment are fundamentally defective. We modify the judgment and order of commitment to accurately reflect J.K.N.'s birth date and the single offense for which he was adjudicated delinquent and, as modified, affirm the juvenile court's judgment and order.

## II. BACKGROUND FACTS

On July 9, 2002, the State filed its third amended petition alleging that J.K.N. had engaged in delinquent conduct by (1) knowingly, and with the intent to deceive, making a false statement to a law enforcement officer conducting a criminal investigation; (2) intentionally or knowingly damaging or destroying the interior walls and furniture of a residence by hitting, smashing, and/or kicking them; (3) unlawfully appropriating a motor vehicle with intent to deprive the owner of the property; and (4) operating a motor vehicle without the effective consent of the owner. J.K.N. waived his right to a jury trial in writing and consented to the stipulation of evidence and introduction of testimony by oral stipulation, affidavits, written witness statements, and other documentary evidence.

A combined adjudication and disposition hearing was conducted on July 18, 2002. At the outset, the State waived the auto theft allegation set forth in paragraph three of its petition and chose to proceed only on paragraphs one, two, and four. After setting forth the evidence for stipulation on each of the three paragraphs, J.K.N. informed his attorney that he wished to stipulate only to paragraph four, unauthorized use of a motor vehicle. After conferring with J.K.N. and his attorney, the State agreed to J.K.N.'s stipulation and dropped the allegations contained in paragraphs one and two. The juvenile court adjudicated J.K.N. delinquent based upon his stipulation to paragraph four-unauthorized use of a motor vehicle. Moving immediately into a disposition hearing, the juvenile court heard evidence and argument and ultimately committed J.K.N. to "the care, custody and control of the Texas Youth Commission . . . for an indeterminate period of time not to exceed the time when **HE** shall be 21 years of age or until duly discharged . . . ."

## III. FITNESS TO PROCEED

In his first point, J.K.N. contends that the trial court erred by failing to sua sponte order a psychiatric examination to determine his mental competence and fitness to proceed. We find no error and overrule J.K.N.'s point.

The family code provides a framework for determinations of mental illness and fitness to proceed within the juvenile justice system. Section 55.31 provides in part that:

(a) A child alleged by petition or found to have engaged in delinquent conduct or conduct indicating a need for supervision who as a result of mental illness or mental retardation *lacks capacity to understand the proceedings in juvenile court or to assist in the child's own defense* is unfit to proceed and shall not be subjected to discretionary transfer to criminal court, adjudication, disposition, or modification of disposition as long as such incapacity endures.

(b) *On a motion by a party,* the juvenile court shall determine whether probable cause exists to believe that a child who is alleged by petition or who is found to have engaged in delinquent conduct or conduct indicating a need for supervision is unfit to proceed as a result of mental illness or mental retardation.

TEX. FAM.CODE ANN. § 55.31(a)-(b) (Vernon 2002) (emphasis added). If the court finds probable cause to believe that the child is unfit to proceed, then the court shall temporarily stay the juvenile proceedings and immediately order the child to be examined. *Id.*

■ J.K.N. concedes that the motion contemplated by section 55.31 was never made in this case. And, although a juve-

nile court has the power to order a physical or mental examination on its own motion at any stage of juvenile proceedings, it is not statutorily required to do so. *Id.* § 51.20; *accord In re E.M.R.*, 55 S.W.3d 712, 719 (Tex.App.-Corpus Christi 2001, no pet.) (refusing to impose on trial court duty of holding sua sponte hearing on child's fitness to proceed in absence of statutory mandate). Consequently, here, the juvenile court was not statutorily required to make any determination regarding J.K.N.'s fitness to proceed.

■ Nonetheless, J.K.N. argues that due process considerations require the court to have a juvenile examined on its own motion "where there is such blatant and extensive evidence of mental illness raised."

■ Although a juvenile delinquency trial is a civil proceeding, it is quasi-criminal in nature. *Smith v. Rankin*, 661 S.W.2d 152, 153 (Tex.App.-Houston [1st Dist.] 1983, orig. proceeding). Accordingly, a child under our juvenile justice system is afforded the basic constitutional protections of an adult. *In re J.E.H.*, 972 S.W.2d 928, 929 (Tex.App.-Beaumont 1998, pet. denied); *In re D.S.*, 921 S.W.2d 383, 386 (Tex.App.-Corpus Christi 1996, writ dism'd w.o.j.). As the court of criminal appeals recently explained in *McDaniel v. State*,

> In both Texas and the federal system, "[i]t has long been accepted that a person whose mental condition is such that he *lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense* may not be subjected to a trial." The conviction of an accused person while he is legally incompetent violates due process. Thus, to protect a criminal defendant's constitutional rights, a trial court must inquire into the accused's mental competence once the issue is sufficiently raised.

98 S.W.3d 704, 709–10 (Tex.Crim.App. 2003) (emphasis added) (citations omitted).

Accordingly, we will examine the record to see whether evidence exists that the trial court should have reasonably concluded that, as a result of mental illness, J.K.N. lacked the capacity to understand the proceedings, to consult with counsel, or to assist in his own defense, so that the court's failure to order a psychiatric examination violated J.K.N.'s due process rights. *See In re K.A.H.*, 700 S.W.2d 782, 784 (Tex.App.-Fort Worth 1985, no writ).

For purposes of the juvenile justice code, a "mental illness" is defined as "an illness, disease, or condition, other than epilepsy, senility, alcoholism, or mental deficiency" that "substantially impairs a person's thought, perception of reality, emotional process, or judgment" or "grossly impairs behavior as demonstrated by recent disturbed behavior." Tex. Health & Safety Code Ann. § 571.003(14) (Vernon 2003); *see also* Tex. Fam.Code Ann. § 55.01 (Vernon 2002).

An examination of the record does reveal some evidence that J.K.N. suffers from "mental illness." It is undisputed that J.K.N. was referred to and spent about a week at Millwood, a facility that treats mental and psychiatric problems. Curtis Thompson, J.K.N.'s probation officer, explained that J.K.N. was transferred from the juvenile detention facility to Millwood for psychological evaluation due to "suicidal ideations, report of hallucinations, as well as threatening behavior to staff" while in detention. Thompson also indicated that J.K.N. was on the MHMR caseload for people with emotional and/or psychiatric problems and agreed that J.K.N.'s problems "at times ... presented as severe." He stated that J.K.N. "clearly has

some psychiatric needs.... However, ... these needs can be addressed at TYC."

Thompson's testimony certainly indicates that J.K.N. is a troubled child with psychiatric needs. However, taken in context, the evidence does not indicate that J.K.N.'s problems rise to the level of a mental illness rendering him unfit to proceed with the adjudication and disposition of the delinquency charges brought in this case. In fact, the record as a whole clearly reflects that, in spite of his psychiatric needs, J.K.N. understood the nature of the proceedings and was able to consult with counsel and to assist in his own defense.

At the adjudication hearing, J.K.N. indicated to the court that he had reviewed the alleged offenses with his attorney and understood the range of possible punishments available to the court if he were adjudicated delinquent. He said he understood his right to have the State bring witnesses forward to testify and to be cross-examined by him, and that agreeing to stipulate to the evidence would waive those rights. J.K.N. and his attorney then had the following exchange in open court:

MR. YOUNG: [J.K.N.], I've talked to you several times since this matter has been pending in Juvenile Court, have I not?

[J.K.N.]: Yes, sir.

MR. YOUNG: And I told you that in the petition, you're charged with essentially giving a false report to the police, criminal mischief; that is, damage to property, and either theft or unauthorized use of a motor vehicle.

Do you understand that?

[J.K.N.]: Yes, sir.

MR. YOUNG: And I talked to you today about stipulating to the false report to the police officer, causing the property damage to the house, and in regard to the car, not theft, but unauthorized use of a motor vehicle?

[J.K.N.]: Yes, sir.

MR. YOUNG: And you understand that's why we are here today?

[J.K.N.]: Uh-huh.

MR. YOUNG: And you also understand we have an absolute right to a trial if we want to. In other words, we can make the State call witnesses and make the State prove its case, okay? Or we can agree to what the witnesses would testify; that is, stipulate to what the witnesses would testify if they were called to testify and if they took the stand.

Do you understand that?

[J.K.N.]: Yes, sir.

THE COURT: And I know that you came from Millwood this morning, is that correct?

[J.K.N.]: Yes.

MR. YOUNG: And you've recently arrived here at Juvenile Court from Millwood approximately 30 minutes ago, is that correct?

[J.K.N.]: Yes, sir.

MR. YOUNG: And you still understand everything that's going on and you have a clear understanding of everything that I've explained to you?

[J.K.N.]: Yes, sir.

MR. YOUNG: And do you still want to testify, or I mean, do you want a trial or do you want to stipulate?

[J.K.N.]: Stipulate.

. . . .

MR. YOUNG: And you understand that at the end of this hearing, if the Judge finds you engaged in delinquent conduct, he may assess punishment. That is, we may move to a disposition phase.

Do you understand that?

[J.K.N.]: Yes, sir.

MR. YOUNG: And I have told you, have I not, that although I'm not going to ask for it, there is a possibility that the Judge can and has the option of disposing of the case by committing you to TYC for an indeterminate amount of time.

Do you understand that?

[J.K.N.]: Yes, sir.

THE COURT: And I've been very up-front in letting you know that's a possible, very possible, consequence out of this case, have I not?

[J.K.N.]: Yes, sir.

THE COURT: Okay, and now do you still want to proceed with the stipulation?

[J.K.N.]: Yes, sir.

MR. YOUNG: Okay, and do you feel like you're in your right mind to make this decision?

[J.K.N.]: Yes, sir.

As illustrated, the record clearly shows that J.K.N. expressed his understanding of the delinquent conduct alleged, the consequences of being adjudicated delinquent, and the effect of stipulating to evidence rather than requiring live witness testimony on the allegations. J.K.N. also indicated that his recent stay at the Millwood mental treatment center did not adversely affect his understanding of the proceedings. In addition to demonstrating his understanding of the proceedings, J.K.N. actively participated in his own defense. Following the State's presentation of stipulated evidence on paragraphs one, two and four, J.K.N. conferred with his attorney and decided that he was only willing to stipulate to paragraph four, unauthorized use of a motor vehicle.

After examining the record, we conclude that the juvenile court's failure to order a psychiatric examination of J.K.N. on its own motion was not a violation of due process. *Accord E.M.R.*, 55 S.W.3d at 719 (holding sua sponte hearing on juvenile's mental competency not required even though juvenile's special education teacher testified that he read at a second grade level and physician testified that juvenile had impulse-control problems, attention deficit hyperactivity disorder, and was bipolar). Accordingly, we hold that the trial court did not err by failing to sua sponte order an examination of J.K.N.'s mental state. J.K.N.'s first point is overruled.

## IV. Sufficiency of the Evidence

In his second point, J.K.N. complains that the evidence is insufficient to sustain the findings required for a proper disposition of his case. We disagree and overrule J.K.N.'s second point.

■ First, J.K.N. argues that the evidence shows that he is in need of treatment for mental illness, not rehabilitation; therefore, no disposition can be made under section 54.04 of the family code. Section 54.04 provides in part that "No disposition may be made . . . unless the child is in need of rehabilitation or the protection of the public or the child requires that disposition be made." TEX. FAM.CODE ANN. § 54.04(c).

The juvenile court specifically found in the order of commitment that J.K.N. "is in need of rehabilitation and that the protection of the public and the child requires that disposition be made." These findings are supported by the evidence. J.K.N.'s social history, which was reviewed by the juvenile court prior to committing J.K.N. to TYC [1], reflects that J.K.N. has had nu-

---

1. "At the disposition hearing, the juvenile court may consider written reports from pro-

bation officers, professional court employees, or professional consultants in addition to the

merous previous offenses, including: possession of marijuana; unauthorized use of a motor vehicle; forgery; possession of a volatile chemical—gasoline; and terroristic threat. The social history also reveals that J.K.N. has received in-patient drug treatment on multiple occasions, as well as mental health treatment. J.K.N. was unsuccessfully discharged from one of these in-patient programs "due to his behavior and for reportedly assaulting a teacher."

In addition to the social history report, Probation Officer Thompson testified that:

Prior to coming to us, [J.K.N.]'s been with our Traditional Probation, he's been with our Intensive Supervision Probation plan. He's also been in our Post program as well as been on our Electronic Monitor system.

[J.K.N.] basically has *exhausted all the resources we have.* I've met with the JPD Resource Staffing Committee twice within the last couple of weeks, and they don't feel that there is any other placement options for [J.K.N.] other than TYC at this point.

[J.K.N.] clearly has some psychiatric needs that we need to get him to be cognizant of. However, they felt that these *needs can be addressed at TYC.* [J.K.N.]'s behavior of late in the last three months has been *spiraling out of control.* He's had a number of referrals. These incidents make about ten referrals to JPD, so *we have concerns about [his] behavior out in the community and the safety of the community.*

[J.K.N.] has made some progress while on our caseload. He completed a successful school year in an alternative education program and has complied with some of the behavioral management requests that we had. However, again, his behavior and criminal activity has seemed to spiral, become more frequent and more severe, so at this time, we feel, from JPD's standpoint, we don't have any other resources we can offer [him]. [Emphasis added.]

Finally, Thompson offered his opinion that:

any program that would be appropriate for [J.K.N.] would include attention to the psychiatric needs, but also would provide a structured, secure environment for [him] that would protect him as well as the people around him, but that would also allow him to pursue academic activities and building skills, so a program such as TYC certainly offers that.

The above evidence shows that, in addition to a structured environment conducive to rehabilitation, TYC also offers appropriate treatment for J.K.N.'s psychiatric needs. In light of this evidence, we hold that the court's findings that J.K.N. needs rehabilitation and that J.K.N. and the public require protection from his destructive behavior are both supported by the evidence and justify J.K.N.'s commitment to TYC.

■ J.K.N. next complains that the juvenile court's "routine rendition" of the three specific findings required by section 54.04(i) lack stated reasons and are unsupported by the evidence. Section 54.04(i) reads in part:

(i) If the court places the child on probation outside the child's home or commits the child to the Texas Youth Commission, the court:

(1) shall include in its order its determination that:

(A) it is in the child's best interests to be placed outside the child's home;

(B) reasonable efforts were made to prevent or eliminate the need for

testimony of witnesses." TEX. FAM.CODE ANN. § 54.04(b).

the child's removal from the home and to make it possible for the child to return to the child's home; and

    (C) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.

TEX. FAM.CODE ANN. § 54.04(i).

The order of commitment issued by the juvenile court specifically states:

    The Court finds it is in the child's best interest to be placed outside the child's home. The court also finds that reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home and the child, in the child's home cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.

We conclude that the evidence contained in the record and already discussed herein is more than sufficient to support each of the findings required by 54.04(i). J.K.N.'s social history evidences his repeated problematic and criminal behavior. Probation Officer Thompson testified to the varied forms of treatment and probation attempted with J.K.N. and concluded that J.K.N. had exhausted these options. Clearly, numerous attempts have been made to cope with J.K.N.'s behavior without resorting to commitment to TYC. Unfortunately, J.K.N. continues to exhibit delinquent and criminal behavior in spite of the measures taken to conform his conduct to the law. Considering the efforts already made, the avenues exhausted, and the concerns regarding J.K.N.'s threatening and suicidal behavior, we hold that the juvenile court had sufficient evidence before it to support a commitment to TYC in compliance with section 54.04(i).

■   Finally, J.K.N. contends that "[t]he specific reasons for the Court's findings are nowhere stated in the order," which violates section 54.04(f)'s mandate that "[t]he court shall state specifically in the order its reasons for the disposition. . . ." TEX. FAM.CODE ANN. § 54.04(f).

J.K.N.'s assertion in this regard is simply not accurate. After making the necessary findings listed under section 54.04(i), the order of commitment goes on to state:

    It further appears to the Court that the best interest of the child and the best interest of society will be served by committing him to the care, custody and control of the Texas Youth Commission, for the following reasons:

    (1) There are no facilities, services or programs available which would meet the needs of the child;

    (2) The Court finds that the educational needs of the child can be met by the Texas Youth Commission;

    (3) The child has been found by the **COURT** to have violated Section . . . **31.07(FEL)** of the Texas Penal Code, on or about . . . **JUNE 20, 2002,** and was adjudicated delinquent on **JULY 18, 2002.**

In addition to the above listed reasons, the order of commitment stated that J.K.N. had been previously adjudicated delinquent for four misdemeanor offenses and one felony offense since September 6, 2000.

Because the juvenile court's order of commitment contains all of the findings and reasons required by section 54.04, subsections (c), (i), and (f), and because we conclude that all such findings and reasons are supported by sufficient evidence, we overrule J.K.N.'s second point.

### V. JUDGMENT AND ORDER OF COMMITMENT

In his third point, J.K.N. complains that the judgment and order of commitment are fundamentally defective. Specifically, J.K.N. complains that the judgment reflects an impossible date of birth–July 3, 2002, and that both the judgment and order of commitment incorrectly state that J.K.N. was adjudicated delinquent based upon paragraphs one, two and four of the State's petition, rather than just on paragraph four–unauthorized use of a motor vehicle.

The judgment of delinquency reads in pertinent part:

[T]he Court after hearing the pleading of all the parties and after hearing the evidence and argument of counsel, finds beyond a reasonable doubt that the allegations in Paragraph(s), **ONE, TWO,** and **FOUR,** of the petition filed herein are true and supported by the evidence.

The Court finds that on this the **18th** day of **JULY 2002,** said child was adjudicated in Paragraph(s) **ONE, TWO,** and **FOUR** of the petition for the offense(s) of **FALSE REPORT TO PEACE OFFICER OR LAW ENFORCEMENT EMPLOYEE,** Section(s) **37.08,** which is a **MISDEMEANOR, CRIMINAL MISCHIEF,** Section(s) **28.03,** which is a **MISDEMEANOR,** and **UNAUTHORIZED USE OF MOTOR VEHICLE,** Section(s) **31.07,** which is a **FELONY,** and the dates of offenses were **MAY 6, 2002** and **JUNE 20, 2002.**

The Court also finds that the said child was born **JULY 3, 2002.**

The order of commitment reads, in relevant part:

(3) The child has been found by the **COURT** to have violated Section(s) **37.08(MISD), 28.03(MISD),** and **31.07(FEL)** of the Texas Penal Code, on or about **MAY 6, 2002** and **JUNE 20,** 2002, and was adjudicated delinquent on **JULY 18, 2002.**

■■■■ This court is authorized to modify the juvenile court's judgment. *See* TEX. R.APP. P. 43.2(b); *see also Asberry v. State,* 813 S.W.2d 526, 531 (Tex.App.-Dallas 1991, pet. ref'd) (holding an appellate court has authority to reform a judgment to include an affirmative finding to make the record speak the truth when the matter has been called to its attention by any source); *accord French v. State,* 830 S.W.2d 607, 609 (Tex.Crim.App.1992). Here, modification of the judgment of delinquency and order of commitment is necessary so that the record accurately reflects the outcome of J.K.N.'s juvenile adjudication. Accordingly, we modify the juvenile court's judgment of delinquency and order of commitment as follows:

(1) the statement in the first quoted paragraph of the judgment of delinquency shall be modified to read: "the allegation in Paragraph **FOUR** of the petition filed herein is true and supported by the evidence";

(2) the statement in the second quoted paragraph of the judgment of delinquency shall be modified to read: "said child was adjudicated in Paragraph **FOUR** of the petition for the offense of **UNAUTHORIZED USE OF MOTOR VEHICLE,** Section 31.07, which is a **FELONY,** and the date of offense was **JUNE 20, 2002**";

(3) the statement in the order of commitment shall be modified to read that J.K.N.: "has been found by the **COURT** to have violated Section 31.07(FEL) of the Texas Penal Code, on or about **JUNE 20, 2002**"; and

(4) the statement in the judgment of delinquency regarding J.K.N.'s birth date shall be modified to read: "the said child was born **JULY 3, 1985.**"

## VI. Conclusion

We overrule J.K.N.'s first and second points, modify the judgment of delinquency and order of commitment as set forth in section V above, and, as modified, affirm the judgment of the juvenile court committing J.K.N. to the Texas Youth Commission for an indeterminate sentence.